Robert E. WRIGHT, Sr.

v.

**SOUTHWESTERN LIFE INSUR-
ANCE COMPANY.**

**Civ. A. No. 17451.**

United States District Court,
W. D. Louisiana,
Monroe Division.

Nov. 14, 1975.

---

Bobby L. Culpepper, Holloway, Baker, Culpepper & Brunson, Jonesboro, La., for plaintiff.

David I. Garrett, Jr., Madison, Files, Garrett, Brandon & Hamaker, Monroe, La., Lyman G. Hughes, Morris Harrell, Rain, Harrell, Emery, Young & Doke, Dallas, Tex., for defendant.

## RULING ON MOTION TO DISMISS UNDER RULE 41(b), F.R.Civ.P.

DAWKINS, Senior District Judge.

By his complaint, Robert E. Wright, Sr. (Wright) brought this diversity action against Southwestern Life Insurance Company (Southwestern), for whom he formerly was a writing agent, for recovery of damages allegedly incurred when 396 tax-sheltered annuities plans (TSAP) written by Wright were converted to group professional annuities plans (GPA-70), thereby terminating many renewal commissions to which he claims he is entitled.

The action was tried without jury on November 4, 1974. At the close of plaintiff's case, we held that the remedy, if any, properly would not be an action for damages, but rather for an accounting. We thereupon ordered plaintiff to submit an amended complaint within fifteen days praying for an accounting. Further, we apprised Southwestern that the accounting would be due ninety days from the filing of plaintiff's amended complaint.

■ Defendant then orally moved for "directed verdict" on plaintiff's original complaint, which we properly must treat as a motion to dismiss pursuant to rule 41(b), F.R.Civ.P.[1] *Federal Insurance Company v. Hardy*, 222 F.Supp. 68 (D.C.Mo.1963).

We now hold that plaintiff's original action is dismissed with prejudice; and, accordingly, enter the following findings of fact and conclusions of law pursuant to Rule 52(a) F.R.Civ.P.

### FINDINGS OF FACT

Plaintiff's association with Southwestern began on October 10, 1955, when he was employed to canvass for applications for life insurance. Physical injuries soon limited Wright's ability to engage in daily canvassing and servicing of clients. However, following passage by Congress of the Technical Amendments Act of 1958, plaintiff became

---

1. " * * * After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). * * * "

acutely interested in the then new TSAP program.

Considerable personal effort expended by Wright resulted in Southwestern's obtaining TSAP franchises among ten institutions of higher learning and educational bodies in Louisiana.[2] Plaintiff sold TSAP's to persons employed in these institutions and regularly serviced their annuity plan needs until April 17, 1968, at which time his agency contract was terminated by Southwestern in accord with the provisions of that agreement.[3]

Absent cancellation or conversion of the policies, plaintiff normally would have received renewal commissions for a period of ten years on each TSAP written by him. However, virtually all of his former TSAP clients converted to newly developed GPA–70 plans, thereby terminating plaintiff's renewal commissions.

Wright argues that Southwestern initiated and offered GPA–70 plans to TSAP policy holders in a bad-faith effort to defeat his receiving income from renewal commissions.

■ We disagree. Evidence adduced at trial clearly shows that Southwestern fashioned the GPA–70 plan not to hurt Wright but to maintain its competitive stature in a nationwide insurance market concerned with the advent of ever-improving plans to be offered to the public. There is not a scintilla of evidence in the record to prove that defendant was motivated in any way by ill will toward plaintiff in devising and offering the GPA–70 program.

Moreover, undisputed testimony elicited from many GPA–70 conversion policy holders shows that they were in no way compelled to convert to GPA–70. Rather, every client was presented with the alternative merits of both plans, thereby creating a climate for intelligent decision whether to convert from TSAP to GPA–70. Thus those policy holders electing to convert did so with their "eyes wide open."

## CONCLUSIONS OF LAW

■ No authority has been brought to our attention, nor do we know of any, which recognizes a vested right in an insurance agent to receive renewal commissions notwithstanding good-faith cancellation or conversion of a policy of insurance. An insurance agent is not a third party beneficiary under a contract of insurance, nor is he privy thereto. *Sterling Colorado Agency, Inc., v. Sterling Insurance Company,* 266 F.2d 472 (10th Cir. 1959).

■ While we recognize that an insurer may not cancel a policy arbitrarily in order to terminate an agent's renewal premiums, *Newcomb v. Imperial Life Insurance Company,* 51 F. 725 (C.C.Mo. 1892), nor so act out of malice toward an agent, evidence has shown Southwestern to be motivated only by a desire to remain competitive and to provide responsible insurance service to its policy holders.

Accordingly, we conclude that plaintiff not only has failed to carry his burden of proof; indeed all of the evidence is against his claims.

Therefore, plaintiff's action is dismissed with prejudice.

\* \* \* \* \* \*

## RULING ON OPPOSITION TO ACCOUNTING MENTIONED SUPRA

Pursuant to our order of November 6, 1974, mentioned *supra,* plaintiff filed an

---

2. These institutions are Northeast Louisiana State College, Northwestern Louisiana State College, Nichols State College, McNeese State College, Southeast Louisiana State College, Louisiana Polytechnic Institute, Grambling College, Southern University, Lincoln Parish School Board, and Southern State College.

3. In the wake of his dismissal, Wright brought an action for damages against Southwestern which we dismissed at 364 F. Supp. 981, affirmed (5th Cir.), 485 F.2d 1238.

amended complaint on November 18, 1974, praying for an accounting. Defendant's accounting was filed March 11, 1975, whereupon plaintiff filed an opposition challenging the sufficiency of the accounting and praying further that an independent auditor be appointed special master for the purpose of reviewing the accuracy of defendant's accounting. On April 10, 1975, we ruled that plaintiff's opposition was merely a "scattershot" attack and ordered plaintiff to file a supplemental opposition stating with particularity his objections to defendant's accounting. The supplemental opposition and brief in support thereof were filed April 25, 1975. Defendant's response thereto was filed with supporting brief on May 12, 1975.

By motion file October 17, 1975, defendant moves for summary judgment dismissing plaintiff's amended complaint.

Plaintiff has offered no evidence to dispute the accuracy of defendant's accounting, rather he continues to assert that he was wronged by the conversion of annuity plans previously written by him. That argument has been rejected by our ruling on plaintiff's original demand, *supra*.

Inasmuch as we perceive no genuine factual dispute as to the accuracy of defendant's accounting, and noting that the accounting reflects no money due plaintiff from Southwestern, we hold that plaintiff is due no relief.

Moreover, recognizing that "reference to a master shall be the exception and not the rule," Rule 53(b), F.R.Civ. P., we decline to refer this to a master upon plaintiff's totally unsupported objections to defendant's accounting.

Accordingly, defendant's motion for summary judgment on plaintiff's amended complaint is granted.