MARVIN, Judge.
In these consolidated actions arising out of an intersectional collision between two automobiles, the lower court denied the demands of each plaintiff, Ms. Roncal and her gentleman friend, Brasher, who were the sole occupants of Brasher’s car.
The issues which plaintiffs raise are factually unique:
—which plaintiff was driving the Brasher car?
—on which street were the two automobiles being driven?
—were either or both Ms. Roncal and Brasher intoxicated, and if so, with what legal effect on each of them with respect to recovery? and
*26 —did the law authorize, before the amendment of CCP 1810 by Act 156 of 1978, a trial court in a non-jury trial to grant a motion for a directed verdict?
The defendants in each suit included the driver of the other car, Reagan, his liability insurer, and the insurer of the Brasher car which afforded liability coverage to an insured driver and uninsured motorist coverage to all occupants of the Brasher car. These suits also produced third party demands.
In her first petition, Ms. Roncal included Brasher and his insurer as defendants, alleging that she was the driver of the Brasher car proceeding on the favored street when the Reagan car, on the unfavored street, ran the stop sign and caused the collision. After Reagan and his insurer asserted in their answer that Reagan was proceeding on the favored street and that it was the Brasher car which ran the stop sign, Brasher sued Ms. Roncal and his own insurer, as well as Reagan and Reagan’s insurer, alleging in the alternative that Ms. Roncal was on the unfavored street. Ms. Roncal then amended her petition and alleged that Brasher was the driver of his automobile and was proceeding on the favored street.[1]
On the basis of testimony from three witnesses who were not in either automobile, the trial court found Ms. Roncal to have been driving the Brasher car on the unfavored street and to have caused the accident by running the stop sign and colliding with Reagan’s car, which was proceeding on the favored street. The record supports these findings.
Witnesses also testified that they saw a beer can and a glass in the Brasher car after the accident and that Ms. Roncal and Brasher smelled of alcohol and appeared to have been intoxicated after the accident. One witness testified that he saw Brasher holding the beer can after the accident. The trial court expressly noted in written reasons for judgment that one witness testified that when Ms. Roncal, who was wandering around the accident scene, was asked if she wanted to sit down, she answered that she was already sitting down. The lower court expressly rejected the testimony of both Ms. Roncal and Brasher, who vigorously asserted that they had not been drinking. The lower court also noted and apparently rejected the testimony of Brasher and his father that Brasher had been using on some hogs earlier in the day a creosote solution which smelled similar to whiskey.
Brasher returned to his motel from his father’s farm about two hours before the accident. Ms. Roncal was with him at the motel, from where they departed to drive to her nearby home, where he was going to bathe and where they would obtain food which they would prepare for their evening meal upon returning to the motel. No tests for blood alcohol content were requested of or performed on Brasher and Ms. Roncal. The lower court noted that Ms. Roncal’s and Brasher’s recollection of how the accident occurred was based on their erroneous assumption they were traveling their usual route on the favored street toward the home of Ms. Roncal and that Ms. Roncal and Brasher were “astonished to learn that they were crossing [the favored street] and not traveling ... on it.” Notwithstanding Brasher’s denials of drinking in an automobile, Brasher admitted prior convictions for DWI and for being drunk.
The lower court also noted testimony that Ms. Roncal ran the stop sign without the slightest reduction of speed and held there was sufficient evidence to conclude that the accident was attributable to Ms. Roncal’s condition from the consumption of alcohol, which was known to Brasher. The issue on appeal questions the “sufficiency” of the evidence to support the lower court’s findings and conclusions.
The assumption of the risk by, or the contributory negligence of, the guest *27 passenger in such cases is an affirmative defense, the burden of proof of which is on the defendant who so pleads. CCP 1005, Prestenbach v. Sentry Ins. Co., 340 So.2d 1331 (La.1976). Prestenbach, supra, states the test as being whether it is more probable than not: (1) that the driver was intoxicated, (2) that her intoxication was a cause of the accident and (3) that the plaintiff guest knew or should have known of the driver’s intoxicated condition. These determinations are made on the “whole of the evidence”, which must take into consideration all of the circumstances and logical inferences of each particular case. Presten-bach, at p. 1334. The test cannot be made more specific or absolute, because a circumstance which exists in one case may not exist in another case.
Considering all of the circumstances shown here, including Ms. Roncal and Brasher not knowing on what street they were traveling, Ms. Roncal maintaining her speed through the stop sign and declaring at the same time to Brasher that she was running a stop sign, we cannot say the lower court committed manifest error. Compare Morris v. Gray, 344 So.2d 106 (La.App. 2d Cir. 1977).
The lower court granted a motion for a directed verdict in each case. In Ms. Ron-cal’s case the judgment was in favor of all defendants. In Brasher’s case, the judgment was in favor of Reagan, his insurer, and Brasher’s UM carrier. The lower court then considered Brasher’s claims against Ms. Roncal and the liability insurer of his vehicle. Proffers were made and heard by the lower court after the motion for directed verdicts were granted and we have reviewed the case and all of the facts shown by the record, as is our constitutional duty.
Plaintiffs argue that a directed verdict simply was not available in a judge trial. Act 699 of 1977 (CCP 1810[A]) provided for a directed verdict in a jury trial but did not prohibit it in a judge trial.[2] This accident occurred on May 6,1976. Trial occurred on May 2,1978. Act 156 of 1978 (CCP 1810[B]) provides for a similar disposition by a motion for dismissal in a judge trial on the grounds that the plaintiff has shown no right to relief upon the facts and the law.[3] This act became effective September 8, 1978. A motion for directed verdict in a judge trial is treated as a motion for dismissal under federal procedure, the source of our CCP 1810. See FRCP 41(b), 50(a), and Wright v. Southwestern Life Ins. Co., 404 F.Supp. 1324, (W.D.La.1975), affirmed 536 F.2d 389 (5th Cir.1976), cert. denied, 429 U.S. 941, 97 S.Ct. 358, 50 L.Ed.2d 310. Authorization for the motion for dismissal may have been contemplated by the legislature in 1977, since it was not prohibited by Act 699 of that year. It is somewhat ironic and inconceivable that a trial judge would be given the power in one instance and not in the other. In any event, Act 156 of 1978 resolved the question for the future.
Where the motion to dismiss is made in a judge trial, federal procedure allows the judge to evaluate and weigh the evidence without requiring that the most favorable inferences be given the plaintiff. Emerson Electric Co. v. Farmer, 427 F.2d 1082 (5th Cir.1970); Weissinger v. United States, 423 F.2d 795 (5th Cir.1970); Blount v. Xerox, 405 F.Supp. 849 (D.C.Cal.1975); 5 J. Moore, *28 Moore’s Federal Practice 1158 (2d ed. 1971). Some states, contrary to the federal practice, equate the motion to dismiss in a judge trial to the motion for directed verdict in a jury trial and require that the most favorable inferences be given the plaintiff. Tillman v. Baskin, 260 So.2d 509 (Fla.1972); Rogge v. Weaver, 368 P.2d 810 (Alaska 1962); Arbenz v. Bebout, 444 P.2d 317 (Wyo.1968).
We need not squarely decide these issues in these consolidated cases or choose which approach should be followed, even assuming the motion to dismiss in a judge trial was available on May 2, 1978, when these cases were tried. These issues may later arise properly postured for our precise determination in other cases. Here the record of the consolidated trial is complete. Proffer of proof was available and was employed below. The consolidated trial did not abruptly conclude with the granting of the motion for directed verdict in the first instance. All factual areas were explored by each litigant who was subjected to, and who was afforded, cross examination. Plaintiffs do not complain that they were prevented from introducing or proffering evidence. Unlike many other jurisdictions, we are constitutionally obligated to review both the facts and the law and are empowered to render any judgment which is just, legal and proper upon the record before us. CCP 2164. The record supports the result below and we find no error of sufficient magnitude to warrant reversal. See American Bank & Trust Co. v. TIL, 340 So.2d 636 (La.App. 2d Cir. 1977).
At the cost of the respective appellant, judgment in each case is AFFIRMED.

. Brasher as well as Ms. Roncal earlier had testified in a trial in the City Traffic Court that Ms. Roncal was proceeding on the favored street. At the trial in District Court, Ms. Ron-cal was impeached by this testimony and by other prior contradictory statements.

. “A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.”

. “In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.”