NATIONAL CITY BANK, APPELLANT, *v.* FLEMING; S.S.C. ENTERPRISES, INC., APPELLEE.

(No. 42832—Decided May 7, 1981.)

*Mr. Stanley Morganstern,* for appellant.

*Martin, Calhoun & Wilson Co., L.P.A.,* and *Mr. Timothy D. Ludick,* for appellee.

JACKSON, C.J. This is an appeal from a decision of the Parma Municipal Court granting judgment against plaintiff-appellant, National City Bank, on a counterclaim asserted against appellant by defendant-appellee, S.S.C. Enterprises, Inc., for the value of repairs performed on a motor vehicle in an action brought by appellant to replevy the motor vehicle.

The facts pertinent to disposition of this appeal are summarized as follows.

In 1978, defendant Thomas Fleming purchased a 1978 Dodge pick-up truck, and granted to appellant (National City Bank) a first mortgage lien upon the pick-up truck. The existence of appellant's lien was noted and certified by the Clerk of the Court of Common Pleas of Cuyahoga County on the certificate of title. Thereafter the pick-up truck was damaged in an accident and defendant Thomas Fleming towed the truck to Quality Auto Painting, a repair garage operated by appellee (S.S.C. Enterprises, Inc.) on Brookpark Road in Parma, Ohio.

After discussing the matter of repairs with Mr. Stanley Cwalinski, the "manager" of appellee, defendant Thomas Fleming executed a contract for the repairs with appellee, and gave appellee $800 toward the cost of the repairs. A work order for $2,166.50 was prepared by appellee, and the repairs were performed. Upon completion of the repairs appellee contacted Mr. Fleming to notify him that the vehicle was ready to be picked up. Subsequently, Mr. Fleming failed to pay for the repairs or take possession of the vehicle, and the vehicle was placed in storage by appellee.[1]

Sometime in December 1979, appellant determined that the pick-up truck was in the possession of appellee, and contact was made to discuss the matter of the repairs and appellant's desire to repossess the vehicle. Appellee refused to permit appellant to take possession of the vehicle until the repair bill was paid.

On January 11, 1980, appellant filed a complaint for replevin in the Parma Municipal Court against Thomas Fleming and S.S.C. Enterprises, Inc. Appellant asserted that it had a security interest in the pick-up truck, that it was entitled to possession of the pick-up truck under the default provisions of its security agreement with Thomas Fleming, and that S.S.C. Enterprises, Inc., wrongfully refused to relinquish possession of the vehicle to appellant upon demand.

On January 23, 1980, the parties stipulated that the vehicle should be appraised by the bailiff of the Parma Municipal Court, and that appellant should post a bond for the vehicle. The parties also stipulated that appellant had the right to possession of the vehicle by virtue of its lien. This stipulation was approved and entered of record by the trial court, and the matter was set for final hearing.

Appellee subsequently filed a counterclaim against appellant sounding in *quantum meruit,* seeking payment for the value of the repairs performed on the pick-up truck and the storage charges incurred. Appellant moved to strike the counterclaim on the ground that it was filed out of rule and without leave of court. The trial court overruled appellant's motion to strike and directed

---

[1] The record indicates that the vehicle was in storage in excess of one hundred seventy days.

appellant to respond to the counterclaim. Thereafter appellant filed a reply to the counterclaim. On April 25, 1980, the trial court granted appellant's claim for replevin and appellee was ordered to release the pick-up truck within five days. Thereafter appellant took possession of the pick-up truck and sold it for $2,900 at public sale.[2]

The matter of appellee's counterclaim was tried to the court on July 31, 1980. Following the opening statement of appellee's counsel, appellant moved for "judgment on the pleadings and opening statement." Appellant's motion for judgment was overruled. On August 12, 1980, the trial court retroactively granted appellee leave to file its counterclaim, and entered judgment for appellee on the counterclaim. Appellant filed a timely notice of appeal and assigned five errors for consideration on review. (Defendant Thomas P. Fleming has not appealed.)

Appellant advances three arguments in support of Assignment of Error No. I.[3] Initially appellant contends that the trial court was without jurisdiction over the subject matter of appellee's counterclaim; alternatively, appellant contends that the trial court abused its discretion in overruling the motion to strike appellee's counterclaim from the file because the counterclaim was filed without leave of court; thirdly, appellant contends that a party against whom a claim for replevin has been asserted may not assert a counterclaim arising out of the transaction which caused the property sought to be replevied to come into the possession of such party. These contentions are not well taken.

It is well established that the subject matter jurisdiction of municipal courts is limited, and that municipal courts have subject matter jurisdiction only as ex-pressly conferred by statute. R.C. 1901.18 prescribes the subject matter jurisdiction of municipal courts, and provides in pertinent part:

"Subject to section 1901.17 of the Revised Code, a municipal court has original jurisdiction within its territory:

"* * *

"(C) *In any action at law based on contract,* to determine, preserve, and enforce all rights, legal and equitable, involved therein, to decree an accounting, reformation, or cancellation of the contract, and to hear and determine all legal and equitable remedies necessary or proper for a complete determination of the rights of the parties thereto." (Emphasis added.)

It is well established that an action in *quantum meruit* is an action *ex contractu,* and an action at law. A form of the action of general assumpsit, an action in *quantum meruit* is governed by principles of equity. See *Philpott* v. *Superior Court* (1934), 1 Cal. 2d 512, 36 P. 2d 635; *Kinkade* v. *New York Shipbuilding Corp.* (1956), 21 N.J. 362, 122 A. 2d 360; *Lytle* v. *Payette-Oregon Slope Irrigation District* (1944), 175 Ore. 276, 152 P. 2d 934; and see *Bates* v. *Winifrede Coal Co.* (Superior Ct. of Cincinnati 1906), 4 Ohio N.P. (N.S.) 265, affirmed (1906), 74 Ohio St. 517.

In order to determine the nature of an action or claim brought in a municipal court, the court must consider the allegations of the pleadings, the issues tendered, and the prayer of the complaint. See *Cenci* v. *Issenmann* (1963), 120 Ohio App. 99, at 101 [28 O.O.2d 293]; and *Stethem Builders, Inc.,* v. *Green* (1964), 4 Ohio App. 2d 113 [33 O.O.2d 157].

In the instant case, the pleadings demonstrate that appellee's counterclaim asserted a count in *quantum meruit* for the reasonable value of the repairs to the

---

[2] After application of the sales proceeds to the debt owed by defendant Thomas Fleming, over $5,000 of the debt owed to appellant remained unpaid.

[3] Assignment of Error No. I provides:

"The court committed error prejudicial to the plaintiff-appellant in overruling plaintiff-appellant's motion to strike the counterclaim."

damaged pick-up truck. Because the Parma Municipal Court has subject matter jurisdiction over actions at law based on contract, and because an action in *quantum meruit* is an action *ex contractu*, and an action at law, we are persuaded that the trial court properly asserted jurisdiction over the counterclaim.

A party against whom a claim for relief is asserted may assert a counterclaim against the opposing party in a responsive pleading pursuant to Civ. R. 13. This rule governs compulsory counterclaims and provides in part:

"(A) A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13."

When a party fails to assert an available counterclaim in a responsive pleading, and the time for amendment of such pleading as a matter of right has passed,[4] such party may under appropriate circumstances amend his responsive pleading with leave of court to include the counterclaim pursuant to Civ. R. 13(F). Civ. R. 13(F) vests the trial court with discretion and authority to permit such an amendment, and provides that "[w]hen a pleader fails to set up a counterclaim through oversight, in-

advertence, or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment." Where the trial court authorizes a party to amend a responsive pleading under Civ. R. 13(F), such determination will not be disturbed on appeal absent a showing of abuse of discretion.

In the instant case, although it does not appear from the record that the trial court granted appellee leave to file the counterclaim prior to the time it was filed, such leave was in effect granted by the trial court when the court overruled appellant's motion to strike. Cf. *Lawreszuk v. Nationwide Ins. Co.* (1977), 59 Ohio App. 2d 111, at page 115 [13 O.O.3d 165]. We are not persuaded that the decision of the trial court to permit appellee to file its counterclaim constituted an abuse of discretion.

Finally, appellant contends that a counterclaim is not properly asserted in an action for replevin. As authority for this proposition, appellant cites the holding of this court in *Central National Bank* v. *Hinds* (1959), 86 Ohio Law Abs. 605, 162 N.E. 2d 874.

It is well established in Ohio that a party against whom a claim for replevin of personal property is asserted may file a counterclaim as to matters arising out of the transaction or occurrence through which the property came into the possession of said party in the first instance. *George D. Morgan & Co.* v. *Spangler* (1870), 20 Ohio St. 38; and see *International Art Publishing Co.* v. *Griesbaum* (Hamilton C.P. 1931), 28 Ohio N.P. (N.S.) 349.

In *Central National Bank* v. *Hinds, supra*, we held that the trial court was without jurisdiction to consider the merits of a counterclaim filed in an action for replevin, where the counterclaim was first asserted after the claim for replevin had gone to judgment. In *Central National Bank* we held that the trial court exhausted its jurisdiction when it found that the plaintiff was entitled to replevin,

---

[4] Civ. R. 15 provides for amendment of a pleading as a matter of right.

and that such jurisdiction could not be revived by a postjudgment counterclaim.

In the case at bar, appellee filed its counterclaim on March 4, 1980, over a month before the trial court determined the merits of appellant's claim for replevin. Because the counterclaim was filed before the determination of the claim for replevin, the facts in *Central National Bank, supra,* are clearly distinguishable. We conclude that the decision of the trial court permitting appellee to assert its counterclaim was not contrary to law.

The first assignment of error is overruled.

In the second assignment of error[5] appellant contends that the trial court erred in overruling appellant's "motion for judgment on the pleadings and opening statement," made after opening statement by appellee on the counterclaim.

Civ. R. 12(C) authorizes any party to move for judgment on the pleadings, "[a]fter the pleadings are closed but within such time as not to delay the trial * * *." Under the Ohio Rules, a motion for judgment on the pleadings made after the commencement of trial is not timely. Cf. Wright and Miller, Federal Practice and Procedure: Civil (1969), Section 1367, at page 687. A ruling on a motion for judgment on the pleadings made after commencement of trial would necessarily involve delay of the trial while the pleadings were inspected by the trial court. Because such a result is forbidden by Civ. R. 12(C), the motion was properly overruled by the trial court.

Under the Ohio Rules of Civil Procedure, a motion for a "directed verdict" does not lie in a nonjury case, *Altimari* v. *Campbell* (1978), 56 Ohio App. 2d 253, at fn. 1 [10 O.O.3d 268], and a motion for a "directed verdict" made in a case tried to the court is deemed to be a motion to dismiss under Civ. R. 41(B). Cf. *Federal Ins. Co.* v. *Hardy* (E.D. Mo. 1963), 222 F. Supp. 68; *Wright* v. *Southwestern Life Ins. Co.* (W.D., Monroe Division, La. 1975), 404 F. Supp. 1324, at page 1325, affirmed (1976), 536 F.2d 389, certiorari denied (1976), 429 U.S. 941; and Wright and Miller, Federal Practice and Procedure: Civil (1971), Section 2371, at page 220.

Pursuant to Civ. R. 41(B)(2), a party against whom a claim is asserted in a nonjury action may move for a dismissal, on the ground that the claimant failed to demonstrate a right to relief, only at the close of the presentation of evidence by the claimant.[6] A motion to dismiss made at the close of a claimant's opening statement in a nonjury action is premature, and is properly overruled by a trial court.

Applying these rules to the case at bar, we conclude that appellant's "motion for judgment on the pleadings and opening statement," made after appellee's opening statement on the counterclaim, was not timely. Whether treated as a motion for judgment on the pleadings under Civ. R. 12(C), or as a motion to dismiss under Civ. R. 41(B)(2), appellant's motion was properly overruled by the trial court.

---

[5] Assignment of Error No. II provides:

"The court committed error prejudicial to the plaintiff-appellant by overruling its motion for judgment on the pleadings and opening statement."

[6] Civ. R. 41(B)(2) provides:

"*After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence,* the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52 if requested to do so by any party." (Emphasis added.)

The second assignment of error is not well taken.

In the third assignment of error[7] appellant contends that the trial court abused its discretion in admitting a "duplicate copy" of the appellee's "work order" into evidence because the evidence failed to adequately demonstrate that the work order was a record of "regularly conducted activity," and that the "original" work order was unavailable. These contentions are not well taken.

Pursuant to Evid. R. 801(C) "hearsay" evidence is defined as "* * * a *statement,* other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted" (emphasis added). The word "statement," as used in Evid. R. 801(C), is defined by Evid. R. 801(A) as "* * * (1) an oral *or written* assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion" (emphasis added).

A general rule on the admissibility of "hearsay" evidence is established by Evid. R. 802 which provides that such evidence is presumptively inadmissible:

*"Hearsay is not admissible except as otherwise provided* by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, *by these rules,* or by other rules prescribed by the Supreme Court of Ohio." (Emphasis added.)

Evid. R. 803(6) establishes an exception to the general rule of inadmissibility of hearsay evidence for certain business records:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

"* * *

"(6) A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, *if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation,* all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method of circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit." (Emphasis added.)

The decision to admit a business record into evidence pursuant to Evid. R. 803(6) rests within the sound discretion of the trial court and such determination will not be disturbed on appeal absent a clear showing of abuse of discretion.

A party attempting to prove the contents of a business record must, as a general rule, introduce the "original" in evidence pursuant to Evid. R. 1002.[8] A broad exception to this general rule is provided by Evid. R. 1003 which permits the admission of a "duplicate" in evidence. Evid. R. 1003 provides:

"A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of

---

[7] Assignment of Error No. III provides:

"The court committed error prejudicial to plaintiff-appellant by admitting into evidence defendant-appellee's Exhibit I."

[8] Evid. R. 1001(3) defines the word "original" as that word is used in Evid. R. 1002, and provides:

"An 'original' of a writing or recording is

the writing or recording itself *or any counterpart intended to have the same effect by a person executing or issuing it.* An 'original' of a photograph includes the negative or any print therefrom. If data are stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an 'original.' " (Emphasis added.)

the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original.''

As defined by Evid. R. 1001(4) ''[a] 'duplicate' is a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and miniatures, or by mechanical or electronic re-recording, or by chemical reproduction, or by other equivalent techniques which accurately reproduce the original.''

A party seeking to exclude a ''duplicate'' from the evidence pursuant to Evid. R. 1003 has the burden of demonstrating that the duplicate should not be admitted. Under this rule, a determination as to whether such duplicate should be admitted is within the sound discretion of the trial court, and unless it is apparent from the record that the decision of the court is arbitrary or unreasonable, the determination will not be disturbed on appeal.

In the case at bar the evidence convinces this court that the trial court did not abuse its discretion in admitting appellee's ''work order'' into evidence. At trial, Mr. Cwalinski testified that the work order was made at his direction and under his supervision at the time the repairs were performed, that the work order remained in his custody and control after it was prepared, and that such records are made as a regular practice whenever repair work is performed. Furthermore, assuming that the ''work order'' admitted was a copy or ''duplicate'' of the original,[9] a review of the record demonstrates an absence of evidence of circumstances which would make introduction of the exhibit ''unfair,'' or which would indicate the existence of a genuine issue as to the authenticity of the ''original.'' The decision of the trial court to admit the ''hearsay'' evidence contained in the ''duplicate'' work order does not constitute an abuse of discretion. Appellant's third assignment of error is not well taken.

In the fourth and fifth assignments of error[10] appellant asserts that the judgment rendered by the trial court on appellee's counterclaim was contrary to law and against the manifest weight of the evidence. We agree.

An action in *quantum meruit* is in the nature of an action at law for the value of services rendered, and literally translated means ''as much as he deserves.'' *Quantum meruit* rests upon the equitable principle that one shall not be permitted to unjustly enrich himself at the expense of another without making compensation therefor. Obligations imposed under a theory of *quantum meruit* are imposed by law without regard to the intent or assent of the parties to be bound, and as a consequence are not truly contractual in nature.

Because obligations imposed under a theory of *quantum meruit* are imposed for reasons of justice and the avoidance of inequity, in order to demonstrate a prima facie case a claimant must show that he conferred a benefit upon another and that the circumstances render it unjust and inequitable to permit the other to retain the benefit without making payment therefor. Moreover, a claimant must demonstrate the reasonable value of the benefit conferred. An action in *quantum meruit*

---

[9] Although Mr. Cwalinski testified that the exhibit was one of the ''copies'' of the work order, upon examination of the exhibit, it would appear that the exhibit introduced and admitted was indeed the ''original,'' as defined by Evid. R. 1001(3).

[10] Assignment of Error No. IV provides: ''The trial court committed error prejudicial to plaintiff-appellant in rendering judgment contrary to law and against the manifest weight of the evidence.''

Assignment of Error No. V provides:

''The trial court committed error prejudicial to plaintiff-appellant in finding that plaintiff-appellant was unjustly enriched in the amount of $1,100.''

involves the application of equitable principles to the facts and circumstances.

It has long been the law of equity that a person who confers a benefit either directly or indirectly upon another in the course of performance of a contract with a third person is not entitled to compensation or restitution from the other party merely because of the failure of performance by the third party. See *Utschig* v. *McClone* (1962), 16 Wis. 2d 506, 114 N.W. 2d 854; *Guldberg* v. *Greenfield* (1966), 259 Iowa 873, 146 N.W. 2d 298; and see Restatement of the Law of Restitution (1937), Section 110, at page 455. However, where it appears from all the facts that the conferral of such benefit was the product of fraud, misrepresentation or bad faith by the party accepting and retaining such benefit, equity will imply an obligation to make payment therefor. See *Costanzo* v. *Stewart* (1969), 9 Ariz. App. 430, 453 P. 2d 526 (holding that a contract beneficiary may be liable in restitution where the beneficiary by his conduct induces the conferral of the benefit); and see Restatement of the Law of Restitution, *supra,* Section 40, at page 155.

In the case at bar appellant was neither a party to the repair contract, nor a guarantor of Thomas Fleming's performance. The record reveals that appellee executed a legally enforceable contract with Thomas Fleming for the repair of the virtually demolished pick-up truck.[11] The mere fact of Thomas Fleming's refusal to pay for the repairs does not render appellant liable to appellee under a theory of *quantum meruit.*

A careful review of the entire record demonstrates a complete absence of evidence of fraud, misrepresentation, or bad faith on the part of appellant. To the contrary, the record demonstrates that appellant first learned of the repairs performed by appellee after the repairs were complete and the vehicle was in storage. Under the facts and circumstances of this case, although it is evident that appellee conferred a benefit which eventually inured to the appellant's advantage, we are persuaded that appellee failed to demonstrate the existence of circumstances which would make it inequitable for appellant to retain the benefit without making payment therefor.

Appellant's fourth and fifth assignments of error are well taken.

Accordingly, the judgment of the trial court is reversed and judgment is entered for appellant on the counterclaim.

*Judgment reversed.*

PARRINO and KRENZLER, JJ., concur.

---

[11] The record indicates that the truck had a salvage value of approximately $1,000 before repairs were initiated.