NATIONAL CITY BANK *v.* JIM ROBERTS BUICK, INC.

(No. 85 CVH 2308—Decided March 18, 1986.)

Willoughby Municipal Court.

*Lawrence R. Bach,* for plaintiff.
*Wilbur N. Ischie,* for defendant.

DEVINNE, J. In this case the plaintiff, National City Bank, sought to replevy a 1982 Buick automobile, owned by Stanton E. Deeley, from the defendant, Jim Roberts Buick, Inc., together with damages for its detention, while the defendant counterclaimed for repairs thereto and for the rental fee of a substitute automobile leased to the owner while such repairs were in progress.

The matter was submitted to the court on March 10, 1986 for its decision upon the pleadings, the parties' joint stipulation of facts, their supplemental stipulation of facts, and their respective briefs with accompanying affidavits submitted in support of their respective motions for summary judgment, which motions were withdrawn.

The pertinent facts are:

1. At the time the defendant came into possession of said vehicle the owner thereof was indebted to the plaintiff in the amount of $4,857.38 and such indebtedness was evidenced by a note and a security agreement, the lien for which was duly recorded and noted upon the owner's certificate of title to said vehicle;

2. Pursuant to a prior order of this court and while this action was pending said vehicle was sold at auction for $4,100 because of the owner's default under said security agreement;

3. When the defendant came into possession of the vehicle, which was subsequent in time to said security agreement, it had been damaged and towed to the defendant's garage where repairs to it were made in a total amount of $2,139.62 at the owner's request, but without the plaintiff's knowledge. Such repairs enhanced its value between $1,800 and $2,000;

4. While said vehicle was being repaired its owner leased a substitute vehicle from the defendant. This, too, was without the plaintiff's knowledge. The rental fee therefor was $1,122 and the plaintiff received no benefit therefrom; and

5. Neither the repair bill nor the rental fee has been paid by the owner.

The plaintiff having waived any claim to damages for the vehicle's wrongful detention, the matter was submitted to the court solely on the question of the merits of the defendant's counterclaim for either the cost of repairs or the enhancement to the vehicle as the result thereof and its claim for the rental of the substitute automobile.

At the outset the court notes that the defendant has a common-law artisan's lien upon the vehicle in question for the reasonable value of its repairs thereto. See 51 Ohio Jurisprudence 3d (1984) 540, Garages, Section 26. However, said lien is subordinate to that of the plaintiff created by the security agreement in question. See *Cleveland Auto Top & Trimming Co.* v. *American Finance Co.* (1931), 124 Ohio St. 169, the syllabus of which states:

"1. An artisan, who furnishes materials or performs labor for the repair of chattel property, has a common-law lien upon such chattel property for the reasonable value of such labor and materials.

"2. Such lien is not extinguished by removal of such chattel property from the possession of the lienholder without his consent.

"3. The common-law lien of such artisan is subordinate to the lien of a valid chattel mortgage, properly executed and filed prior to the performance of labor or furnishing of materials by such artisan.

"4. An action in replevin will lie against such artisan on behalf of such chattel mortgagee."

Clearly, then, the plaintiff may, as was done here, replevy the vehicle and sell it upon the owner's default under said security agreement. But what are the rights of the respective parties to the proceeds realized on such sale, *viz.,* $4,100? Such question is one involving lien priorities. As early as 1923 the Ohio Supreme Court held that the security agreement takes precedence over the artisan's lien. See *Metropolitan Securities Co.* v. *Orlow* (1923), 107 Ohio St. 583, the second paragraph of the syllabus of which reads:

"Where such chattel property is incumbered by a valid chattel mortgage, properly executed and filed, according to the statutes of Ohio in such cases made and provided, such record is constructive notice to persons who thereafter perform labor or furnish materials in repairing such chattel property, and the common-law lien of such artisan is subordinate to the lien of the mortgagee thereon."

As previously noted, defendant's lien is a common-law one. Plaintiff's lien, however, arises by statute and is governed by R.C. 4505.13, found in Ohio's automobile certificate of title law, which at all times applicable herein provided, in part, as follows:

"* * * Any security agreement covering a security interest in a motor vehicle * * * [is] valid as against the creditors of the debtor, whether armed with process or not, and against subsequent purchasers, secured parties, and other lienholders or claimants."

However, the inquiry does not stop here. Since automobiles are "goods" within the ambit of the Uniform Commercial Code, it is necessary that consideration be given to that portion thereof, namely, R.C. 1309.29, which reads as follows:

"When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise."

Next, the court must inquire into the interaction between R.C. 4505.13, which gives rise to plaintiff's statutory lien, and R.C. 1309.29, which perforce includes defendant's common-law artisan's lien. The answer to such latter inquiry is found in the syllabus of the Ohio Supreme Court in the case of *Commonwealth Loan Co.* v. *Berry* (1965), 2 Ohio St. 2d 169, which states:

"The specific priority granted in Section 4505.13, Revised Code, to liens noted upon the certificate of title of a motor vehicle makes such liens valid against other liens and prevails over the general provision of Section 1309.29, Revised Code, relating to artisan's liens. * * * See *Snyder* v. *Ryan* (1965), 2 Ohio St. 2d 171 [31 O.O.2d 322]."

In the light of the foregoing analysis it is evident that plaintiff's statutory lien is superior to defendant's common-law artisan's lien. And, since the sale of the vehicle in question produced less than the amount due the plaintiff under its security agreement, no funds are available for distribution to the defendant to apply on its claims. Further, the court observes that no artisan's lien exists in defendant's favor for the rental fee for a substitute automobile nor has the defendant cited any law to the contrary.

Defendant seeks to escape the application of the foregoing legal principles on the basis that the repairs enhance the value of the vehicle and produced a windfall to the plaintiff upon its sale which it is inequitable for the plaintiff to retain. Such assertion is founded on the theory of quasi-contract which is

not a true contract, express or implied, but is "an obligation imposed by law to promote justice and to prevent fraud or wrongdoing." 18 Ohio Jurisprudence 3d (1980) 266, Contracts, Section 342.

In support thereof the defendant cites the case of *Kazmier* v. *Thom* (1978), 63 Ohio App. 2d 29 [17 O.O.3d 237], which involved an action by a contractor to recover the value of improvements to leased property against its owner who was not a party to the contract therefor and in which the contractor sought recovery upon either a mechanic's lien theory or the theory of unjust enrichment. The lower court granted the lessor's motion for summary judgment on both theories. The appellate court sustained such ruling as to the mechanic's lien theory, but remanded the case to the lower court for its consideration of the theory of unjust enrichment as a basis for recovery of the enhanced value of the leased property.

Admittedly, in a proper case, recovery may be had in quasi-contract or in *quantum meruit* to prevent another's unjust enrichment. See 18 Ohio Jurisprudence 3d, *supra,* at 268, 269, where the following appears:

"The doctrine of unjust enrichment is that a person shall not be allowed to profit or enrich himself inequitably at another's expense, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly."

However, *recovery under the theory of unjust enrichment or in quantum meruit is only proper where one party in fact has been unjustly enriched.* Or, to put it another way:

"While it is a rule that the law upon fundamental principles of justice will not permit one person to enrich himself un-justly at the expense of another, the statement of the rule discloses its limitations. There must be unjust enrichment to justify a recovery under the rule. It is not sufficient for the plaintiff to show that he has conferred a benefit upon the defendant. He must go further and show that under the circumstances he has a superior equity so that, as against him, it would be unconscionable for the defendant to retain the benefit." *Id.* at 270, Section 343.

In the case *sub judice* the defendant had no contractual relationship with the plaintiff and dealt solely with the owner for the repairs and the rental in question. The plaintiff had no knowledge thereof but the defendant was chargeable with constructive notice of the plaintiff's superior security interest in the vehicle. To permit the defendant to recover here would saddle the plaintiff with the defendant's own improvident contract with the owner and eviscerate the priority accorded to the plaintiff under Ohio law. That the plaintiff in no way caused defendant's loss which it now seeks to foist off upon the plaintiff is conceded by the defendant, for its brief filed in support of its motion for a summary judgment contains the following statement:

"It is not claimed that the bank was a party to the contract nor a guarantor of the contract; neither is it claimed that the bank procured any repairs or enhancement of value by fraud, misrepresentation or bad faith upon Roberts."

Hence, the court concludes that there is no legal or equitable basis to support defendant's counterclaim for either the contract price of said repairs, or the enhanced value of the vehicle resulting therefrom, or the rental fee of the substitute vehicle furnished to the owner during the course thereof. Such conclusion is buttressed by the following statement of law found in *National City Bank* v. *Fleming* (1981), 2 Ohio App. 3d 50, at 58:

"It has long been the law of equity that a person who confers a benefit either directly or indirectly upon another in the course of performance of a contract with a third person is not entitled to compensation or restitution from the other party merely because of the failure of performance by the third party. * * * However, where it appears from all the facts that the conferral of such benefit was the product of fraud, misrepresentation or bad faith by the party accepting and retaining the benefit, equity will imply an obligation to make payment therefor."

In summary, to paraphrase the language of the court in *National City Bank* v. *Fleming, supra,* the court finds that:

In the case at bar plaintiff was neither a party to the repair contract or the rental contract, nor a guarantor of Stanton E. Deeley's performance. The facts reveal that the defendant executed a legally enforceable contract with Stanton E. Deeley for the repair of his damaged 1982 Buick automobile and the rental of a substitute vehicle during its repair. The mere fact of Stanton E. Deeley's refusal to pay therefor does not render plaintiff liable to defendant under a theory of *quantum meruit* or unjust enrichment.

Accordingly, judgment is rendered for plaintiff on the defendant's counterclaim and, pursuant to the parties' supplemental stipulation of facts, the plaintiff's second cause of action (which sets forth a claim for the wrongful detention of said vehicle) is dismissed with prejudice.

*Judgment accordingly.*

DeVinne, J., retired, of the East Cleveland Municipal Court, sitting by assignment as the Acting Judge of the Willoughby Municipal Court.