This appeal arises from a judgment following a bench trial. The parties' dispute arose from the purchase of a used automobile at an auction and the subsequent termination of their business relationships. For simplicity, the parties shall be referred to by their proper names.
The background facts are briefly summarized as follows: KP Adjusters, Inc., a corporation formed by Kathryn Krinek (now Pavarini) and Philip Pavarini, Sr. to engage in the business of automobile repossessions, commenced this action in the Berea Municipal Court. Krinek later joined the action as an additional plaintiff in the first amended complaint and became the sole plaintiff in the second amended complaint. The action was transferred from the municipal court to the court of common pleas.
Krinek's second amended complaint raised claims of fraud, violations of the Consumer Sales Practices Act, and unjust enrichment against Robert Manning and two corporations he owned and operated: Seaman Group, Inc., a car rental business, and Prime Commercial Credit, Inc., a financing business. The transaction, like just about every transaction the parties were involved in together, was unusual.
Krinek alleged that, with the assistance of Manning and Seaman Group, she purchased a used red 1990 Pontiac Bonneville at an automobile auction. Because Krinek was at work, her companion and later husband, Pavarini, delivered from their joint account the purchase price of $4,300 to the auction.
On June 21, 1993, Pavarini, who did collection and miscellaneous work for Seaman Group, rode with Manning to the auction in Akron. Manning and Seaman Group, a car rental company, were necessary for the sale because the auction was open only to automobile dealers, lessors, and car rental companies, not to members of the general public, such as Krinek or Pavarini. Following the purchase, title to the Bonneville was transferred to Seaman Group. Because Seaman Group was not a licensed automobile dealer, however, it could not re-transfer title to the actual buyer until at least 90 days elapsed. The parties dispute whether they agreed to $100 per month rental until the title was transferred.
The parties' arrangements were oral, informal, ambiguous, and disputed. It is clear that they jointly structured the transaction to make it appear to outsiders as if it were something other than what it was. Unfortunately for them, however, they subsequently disagreed among themselves who was the actual buyer of the Bonneville.
On October 18, 1993, Pavarini borrowed $2,000 and, in what was a rare occurrence, actually executed a written note. The parties dispute whether the terms of the note were subsequently altered. Prime Commercial, Manning's financing company, argued that Pavarini borrowed the $2,000 from it and, in return, granted it a security interest in the Bonneville which Manning had helped him purchase at the auction. Pavarini argued, on the other hand, that it was Manning from whom he borrowed the $2,000 and that the note was subsequently altered to state both that the funds came from Prime Commercial and that Pavarini granted a security interest in the Bonneville.
On May 21, 1994, approximately eleven months after the original purchase of the vehicle from the auction, Pavarini and Krinek went to Manning's house, where one of the two received from Manning an executed certificate of title to the Bonneville. The new owner was not specified on the title form, but Krinek notarized the document.
On June 1, 1994, less than two weeks thereafter, Prime Commercial applied to the County Clerk of Courts for a duplicate certificate of title to the Bonneville. Prime Commercial asserted that the prior title had been "stolen" and alleged Pavarini and/or Krinek committed theft by deception. Specifically, it claimed the two misrepresented their purpose for obtaining title to circumvent Prime Commercial's security interest in the vehicle.
Informed of these allegations, Krinek sought a declaration that the duplicate certificate of title issued to Prime Commercial was null and void. She also sought compensatory and punitive damages, attorney fees, and costs.
Seaman Group and Prime Commercial filed their own claims of fraud against Pavarini and Krinek. Seaman Group alleged that Pavarini committed fraud by stating that he, rather than Krinek, purchased the Bonneville to induce it to enter into the transaction. Seaman Group alleged that Pavarini agreed to pay it a $100-per-month rental fee for the Bonneville until title was transferred to him and to be personally liable for all costs. Prime Commercial alleged, furthermore, that Pavarini committed fraud by inducing Prime Commercial to loan him $2,000 on the misrepresentation that he granted to it a valid security interest in the Bonneville. Finally, they both alleged that Krinek conspired with Pavarini to commit these frauds and improperly obtain the certificate of title without satisfying the outstanding payment obligations.[1]
The matter proceeded to a bench trial over the course of several days. During her case in chief, Krinek testified and presented testimony from Manning, as if on cross-examination, and from her husband, Pavarini. Following the denial of their motion for directed verdict, defendants presented testimony from two independent witnesses, Jim and Jacqueline Blame, as well as additional testimony from Pavarini, Krinek, and Manning.
The trial court entered judgment in favor of Krinek on her complaint declaring that the duplicate certificate of title was null and void, but awarded her no damages. In its four-page journal entry, the trial court also entered judgment for Manning against Pavarini in the amount of the $2,000 loan but denied any further relief. Prime Commercial, Seaman Group, and Manning appeal from the trial courts judgment. Krinek pro se filed a belated notice of cross-appeal, which this court dismissed.
The first assignment of error argues the trial court improperly denied a motion for directed verdict against Krinek:
 THE TRIAL COURT ERRED IN FAILING TO GRANT DEFENDANTSAPPELLEES' [SIC APPELLANTS'] MOTION FOR DIRECTED VERDICT BECAUSE PLAINTIFF-APPELLEE FAILED TO PROVE ESSENTIAL ELEMENTS OF HER CAUSES OF ACTION.
This assignment lacks merit.
Defendants argue that the trial court improperly denied their motion for directed verdict made at three points: after opening statements, at the close of plaintiffs case, and at the close of all the evidence. We are unpersuaded for both procedural and substantive reasons.
Initially, we note that defendants made the wrong motion. Motions for "directed verdict" under Civ.R. 50 apply only in actions tried to a jury, rather than to the court. In actions tried to the bench, as in the case at bar, the proper motion is for involuntary dismissal under Civ.R. 41(B)(2). The grounds and standards for granting the two types of motions are different.
It is well established that, unlike motions for directed verdict, a motion for involuntary dismissal at the close of a plaintiff's opening statement is premature and should be overruled. E.g., Jackson v. Coesard (1989), 48 Ohio App.3d 309,312 (citing National City Bank v. Fleming (1981). 2 Ohio App.3d 50). As a result, defendants have failed to show any error in the denial of their motion at this stage of the proceedings
Civ.R. 41(B)(2) likewise expressly recognizes that, when a motion for involuntary dismissal is made at the close of plaintiffs case, the trial judge "may decline to render any judgment until the close of all the evidence." E.g., Baker v.Conlan (1990), 66 Ohio App.3d 454, 462; Jannell, Inc. v. Woods
(1980). 70 Ohio App.2d 216, 217. Thus defendants have failed to show any error in the denial of their motion at this stage of the proceedings.
Finally, the substantive defects in defendants arguments warranted denying their motion. Essentially, defendants argued that plaintiff failed to produce evidence to support each element of her claims. They contend (1) that her claims of fraud required her to establish that the original certificate of title granted by Seaman Group was valid and (2) that she presented no evidence to support her Consumer Sales Practices Act and unjust enrichment claims.
Defendants' arguments concerning the fraud claims result from an overly restrictive reading of Krinek's complaint. Count I alleged defendants committed fraud to obtain the duplicate certificate of title when they misrepresented that the original title had been stolen.[2] Count III alleged defendants committed fraud in the initial transaction by misrepresenting that good title would be conveyed. Contrary to defendants argument, plaintiff was not required to prove that the original certificate of title granted by Seaman Group was valid to establish any of these claims.
Also lacking merit is defendant's argument that plaintiff failed to present any evidence to support her claims under the Ohio Consumer Sales Practices Act. Plaintiff produced evidence, through her own testimony and that of her husband, to support a claim of common law fraud. That evidence, if believed, also shows that such acts were unfair, deceptive, and/or unconscionable acts or practices under the lesser standards set forth in R.C. Chapter 1345.
Finally, defendant's argument that there was no evidence to support a claim of unjust enrichment also lacks merit. They argue that none of them received any benefit because the $4,300 purchase price for the Bonneville was paid to the Akron auction and none of the defendants possessed the vehicle. This argument, however, ignores that defendants claimed an ownership and/or security interest in the vehicle without having given any value to its owner to obtain such interest. In other words, defendants claim to have an interest in a car they paid no part of — all on the basis of a loan of $2,000 given to someone who did not own the car.
Accordingly, the first assignment of error is overruled.
The second assignment of error challenges the manifest weight of the evidence, as follows:
 THE TRIAL COURT ERRED IN ITS DECISION BECAUSE ITS RULINGS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW.
This assignment lacks merit.
Defendants contend that the trial court improperly found in favor of plaintiff on her claim (1) that the Bonneville belonged to her and (2) that the duplicate certificate of title was invalid. They also complain that the trial court did not recognize the validity or extent of their claim to a security interest in the vehicle. They contend that their case was more credible than that presented by Krinek and Pavarini.
In cases tried to the bench, it is well established that it is the role of the trial judge to determine the credibility of witnesses and weight to be given their testimony. The trial court has a superior opportunity to observe the witnesses. Reviewing courts will not reverse a trial courts judgment on manifest weight-of-the-evidence grounds when its determination is supported by some competent, credible evidence going to all essential elements of the case. E.g., Baker v. Conlan, supra at 463 (citing C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus).
The record reveals that the parties each made allegations that their respective adversaries engaged in fraud, committed criminal acts, and lied under oath during these proceedings. The evidence concerning the relevant transactions was predominately oral and ambiguous, and the parties presented sharply conflicting versions of events. The trial judge denied each party most of the relief they had sought. Under the circumstances, defendants failed to show that the trial court lost its way and created a manifest miscarriage of justice when it evaluated the case and resolved the conflicts in the evidence.
A central dispute in the case was who had purchased the Bonneville. Krinek and Pavarini both testified that they informed Manning that the car was to belong to Krinek. (Tr. 26, 146, 173.) Manning testified to the contrary that Pavarini purchased the vehicle. The facts were somewhat ambiguous because no written documents were executed and hostile parties argued in hindsight about prior oral statements. Under the circumstances, defendants have not shown the trial court erred by crediting plaintiffs version of events.
The record shows that Pavarini had already purchased a different vehicle, a 1987 Chevy, from Seaman Group for his own use. Thus, it was less likely that he would purchase a second vehicle, such as the 1990 Bonneville, for himself. Moreover, the purchase of the Bonneville was made before KP Adjusters, Inc. was conceived of as a venture or incorporated, so it is clear that KP Adjusters was not the original purchaser.
The evidence likewise supports the trial courts findings that no security interest attached to the Bonneville and that no one agreed to pay any of defendants $100-per-month rental before the title was transferred after the original auction sale. The record in this case contained a note executed by Pavarini in the amount of $2,000. The parties disputed whether the note was subsequently altered to grant a security interest in the vehicle.
Even if the note and security interest were not altered, however, the trial court could properly find that Pavarini could not grant a security interest in a vehicle he never owned. As noted above, the trial court found that Krinek was the purchaser. Moreover, even if Pavarini were an agent acting for Krinek, there was no evidence that he had authority to pledge her property f or his personal debts.
The trial court found that Pavarini owed Manning $2,000 as evidenced by the note. This was simply one of many transactions between Pavarini and Manning that did not involve Krinek. Defendants contend they were entitled to an award of more money. However, there was some question concerning the accuracy of the statement of debts owed by Pavarini. Moreover, the record contained no written document evidencing an agreement by anyone to pay Seaman Group $100 per month to rent the vehicle after the auction purchase. Under the circumstances, defendants have not shown that the trial courts judgment is against the manifest weight of the evidence.
Accordingly, the second assignment of error is overruled.
Judgment affirmed.
[1] Pavarini pro se filed additional claims which the trial court recognized, in its final journal entry, had been dismissed prior to trial.
[2] Count II alleged damages from the loss of use of the vehicle resulting from the alleged fraud.
It is ordered that appellee recover of appellant her costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES M. PORTER, A.J. — and
 ANNE L. KILBANE, J. CONCUR.
 ___________________ DIANE KARPINSKI JUDGE