OPINION
Defendant/appellant, Luciano Garcia ("the appellant"), appeals the conviction of the Hancock County Court of Common Pleas finding him guilty of theft, in violation of R.C. 2913.02(A)(2). For the following reasons, we affirm the judgment of the trial court.
The pertinent facts and procedural history in this case are as follows. In early November, 2000, the appellant and his wife, Nora Garcia, went to the Elder Beerman store in Findlay, Ohio. The two claimed that they went to the store with the intention of purchasing a birthday gift for Nora's niece. However, while the pair was in the girl's department, Mrs. Garcia produced a shopping bag from her purse and begin putting numerous articles of clothing into it.
The store's loss prevention personnel, Stephanie Gonzales and Stephen Fryburg, observed the Garcias acting suspiciously through the store's video monitoring equipment and, later, from the sales floor. Ms. Gonzales and Mr. Fryburg testified at trial that the appellant handed items to his wife, which she then placed in the shopping bag, and acted as "look out."
As the appellant and his wife exited the store, Ms. Gonzales approached them and asked them to return inside. According to Ms. Gonzales, when she approached them, the appellant raised his fist as if to strike her. The appellant and his wife then fled through the parking lot. Mrs. Garcia was apprehended but the appellant managed to drive off in his car, and was apprehended at a later time.
The appellant was indicted for theft, in violation of R.C. 2921.12(A)(2). He was found guilty by a jury and sentenced to eleven months in prison. Pursuant to R.C. 2967.28(F)(4), the appellant received an additional twelve month sentence for violating the terms of his post conviction release, which, according to statute, runs consecutive to the eleven month sentence.
The appellant now appeals, asserting five assignments of error for our review.
 ASSIGNMENT OF ERROR NO. 1 The trial court erred in refusing to allow defense exhibits A and B into evidence or to allow counsel to ask other questions to attack the credibility of Stephanie Gonzalez.
The appellant asserts that the trial court erred in violation of Crim.R. 16(B)(1)(g) by not allowing the appellant to use witness Stephanie Gonzales' prior written reports to impeach her trial testimony. The appellant claims that inconsistencies exist between Ms. Gonzales' trial testimony and her previous written reports regarding the shoplifting incident because Ms. Gonzales' testimony contained more detail than did her reports. Yet, the appellant does not point out exactly which details were omitted from the witness' reports.
Crim.R. 16(B)(1)(g) provides in relevant part:
 In camera inspection of witness' statement. Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.
 If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies.
 If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon.
The trial court has broad discretion under Crim.R. 16(B)(1)(g) to determine the existence of inconsistencies in a witness' testimony, and, absent a showing of abuse of discretion, an appellate court may not disturb a trial court's finding.[1] Ohio courts have held that "[a] a statement can be inconsistent because it has omitted material facts."[2]
However, it is also natural that certain details that were omitted from a witness' previous statements may be brought out for the first time at trial, and it is not appropriate to construe such omissions to be inconstancies.[3] Only material omissions may be taken as inconsistencies,[4] and it is within the trial court's discretion to determine whether the omission is material and whether it is inconsistent with the witness' trial testimony.[5]
A review of the record in this case reveals that upon the defense counsel's attempt to use Ms. Gonzales' written reports on cross-examination the prosecution requested to approach the bench and objected. At that point, the trial court reviewed the statements in the presence of both attorneys and concluded that they could not be used to impeach. Specifically, the trial court concluded that there was no "substantial glaring omission" between Ms. Gonzales' trial testimony and her previous statements. Furthermore, as noted above, the appellant has failed to direct this court's attention to any specific material omissions in Ms. Gonzales' prior statements to aid us in our review. We agree with the appellee and with the trial court that it is reasonable for a witness who is on the stand for several hours to testify in greater detail than she reported in a brief statement for police. Therefore, we find that the trial court did not abuse its discretion in determining that there were no material omissions in Ms. Gonzales' written statements that would render it inconsistent with her testimony at trial.
Accordingly, the appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. 2 The trial court erred in admitting a copy of a video tape from the Elder Beerman store's security cameras instead of the original in violation of the Best Evidence Rule and further erred in admitting items of clothing marked as State Exhibits 6 through Q as evidence where there was an insufficient chain of evidence established resulting in unfair prejudice to the Appellant.
The appellant claims that he was unfairly prejudiced by the admission of certain evidence at his trial. For the following reasons, we disagree.
The first piece of evidence with which the appellant takes issue is a video tape copy of images caught on the Elder Beerman store's security camera during the shoplifting. Because of the nature of the store's taping equipment, it was at least impractical for the originals to be played in court. The appellant argues that there is a possibility that the original was altered or that parts of the original were omitted on the copy. Further, the appellant states that the videotape was never properly authenticated.
The tape in question qualifies as a "duplicate" under Evid.R. 1001(4) in that it was produced by electronic re-recording of the original. Evid.R. 1003 provides that a duplicate is admissible to the same extent as an original unless (1) there is a genuine question raised as to the authenticity of the original or (2) under the circumstances it would be unfair to admit the duplicate in lieu of the original. Pursuant to this rule, a party who seeks to exclude a duplicate from evidence has the burden of demonstrating that it should not be admitted.[6] Thus, any objection that is raised to the admission of a duplicate must be more than a frivolous objection.[7] Moreover, "a determination as to whether such duplicate should be admitted is within the sound discretion of the trial court, and unless it is apparent from the record that the decision of the court is arbitrary or unreasonable, the determination will not be disturbed on appeal."[8]
There is no evidence in the instant case to suggest that the duplicate tape used at trial was not authentic or that it was unfair to admit it in lieu of the original. The appellant intimates that the duplicate may have omitted important sentences or frames, a suggestion which, if true, would make it unfair to admit the duplicate.[9] His only support for this allegation is the fact that Ms. Gonzales admitted that more than one copy of the original existed and that there had been an aborted attempt to make a copy that slowed down the original in order to enhance the picture. However, according to Ms. Gonzales, that copy was never finished and it was not the tape that was shown in the courtroom. In conclusion, we note that the trial court offered the appellant's attorney a chance to view the original tape at the Elder Beerman Store in order to make comparison between the original and the duplicate shown in court but that the appellant's attorney did not take advantage of this opportunity.
The record does not support the appellant's assertion that the duplicate was not properly authenticated. At trial Ms. Gonzales testified that the duplicate was a true and accurate copy of the original tape and identified the tape as one that she personally purchased by identifying her handwriting on the tape's label. We find that Ms. Gonzales testified sufficiently to satisfy Evid.R. 901, as she had personal knowledge regarding both the original tape and the duplicate and was able to state that the duplicate correctly reproduced the original.[10]
For the foregoing reasons, we find the appellant's arguments regarding the duplicate tape not well-taken.
The appellant next argues that exhibits 6A through 6Q, which were identified at trial as the items of clothing that appellant and his wife attempted to take from the store, should not have been admitted into evidence because a sufficient chain of custody was not established.
Chain of custody is a part of the authentication and identification mandate set forth in Evid.R. 901, which reads in relevant part: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." While state has the burden of establishing a chain of custody for a specific piece of evidence, that burden is not absolute.[11] Rather, "[t]he state need only establish that it is reasonably certain that substitution, alteration or tampering did not occur."[12] Thus, even where there is a break in the chain of custody, this effects the weight to be afforded the evidence, as opposed to its admissibility.[13]
A review of the evidence in this case reveals the following circumstances surrounding exhibits 6A through 6Q. After the items of clothing were retrieved from the appellant's wife, Ms. Gonzales and two of the state's other witnesses composed a list of the property which included cost, a description of each item, and each item's UPC number. The articles of clothing were then placed in a bag different from the one retrieved from the appellant's wife. There was some discrepancy in the various witness' testimony regarding exactly where in the locked apprehension room the items were then placed. However, it was established that the items never left this room before trial and that access to the area was strictly limited.
We agree with the appellee that in order to find for the appellant we must accept the possibility that some unknown individual gained access to the store's apprehension room and switched the original clothing with items of exactly the same brand, color, and size. Such speculation does not convincingly call into doubt a reasonable certainty that substitution, alteration or tampering with exhibits 6A through 6Q did not occur.
Accordingly, the appellant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. 3 The trial court erred in allowing the State to impeach the character of Defendant with a 1988 conviction of aggravated trafficking in heroin where its probative value was outweighed by its prejudicial effect.
The appellant protests that the trial court should not have allowed the state to use for impeachment the appellant's approximately thirteen-year-old conviction for aggravated trafficking in heroin. He asserts that the conviction did not relate to his honesty and veracity and that there is no similarity between the instant theft offense and the crime of trafficking in heroine and that, therefore, the probative value of the evidence was substantially outweighed by its prejudicial effect.
The applicable portion of Evid.R. 609(B) states:
 (B) Time limit. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of conviction or of the release of the witness from confinement, or the termination of probation, or shock probation, or parole, or shock parole imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.
Pursuant to Evid.R. 609, the trial court has broad discretion to determine whether prior convictions should be admitted into testimony and the extent to which such testimony may be used.[14] After a consideration of all relevant factors and a review of the record, we find that the trial court did not abuse its discretion in admitting the appellant's prior conviction into evidence for the purpose of impeaching him.
The record shows that the appellant attempted to convince the jury through his direct testimony that he fully accepted responsibility for his previous crimes by pleading guilty and that he pled not guilty for the instant offense because he was innocent. In an effort to rebut this contention, the state presented evidence that all of the appellant's guilty pleas, including the one for the conviction at issue here, were the results of plea bargains. The trial court allowed the state to use the trafficking in heroine conviction only for that limited purpose and instructed the jury that it should only consider the conviction for that purpose.
The appellant raised an issue regarding the timeliness of the trial court's limiting instructions, which were given along with the general jury instructions at the close of evidence. The appellant claims that it was error for the trial court not to give these instructions at the time the evidence was offered.
The record reveals that the appellant's trial counsel failed to object to the timing of the limiting instruction at trial. The Ohio State Supreme Court held in State v. Perry that Crim.R. 30(A)[15] acts as a bar to an assignment of error regarding a trial court's failure to provide a limiting instruction where no limiting instruction was requested at trial.[16] Therefore, having failed to timely request limiting instructions at trial, the appellant has waived this issue on appeal.
For the foregoing reasons, the appellant's third assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. 4 The imposition of an additional twelve month sentence pursuant to Ohio Revised Code section 2967.28(F)(4) violated the Due Process clauses of the United States and the Ohio Constitutions and, the Double Jeopardy clauses of the United States and Ohio Constitutions.
The appellant challenges the constitutionality of his sentence, asserting that R.C. 2967.28(F)(4) violates his right to due process and also that it is violative of the constitutional proscription against double jeopardy. We overrule the appellant's assignment of error as to his due process rights on the authority of Woods v. Telb[17] and Statev. Jones.[18]
The Ohio State Supreme Court has not specifically addressed whether R.C. 2967.28 violates double jeopardy, however, distinguishing R.C. 2967.28
from Ohio's prior parole system, the Woods court stated:
 Under the current system of post-release control, the judge sentences the offender from the options available under the new sentencing scheme and informs the offender that he or she may be subject to a definite period of post-release control, which may last for up to three years in the case of discretionary-post-release control, and that a violation of those conditions would result in additional time up to fifty percent of the original sentence. Those terms are part of the actual sentence, unlike bad time, where a crime committed while incarcerated resulted in an additional sentence not imposed by the court. In other words, the court imposes the full sentence and the APA determines whether violations merited its imposition. The offender is fully informed at sentencing that violations of post-release control will result in, essentially, "time and a half."[19]
Based on this language, we conclude that R.C. 2967.28 does not violate the double jeopardy clause of the United States or Ohio Constitutions.[20]
Accordingly, the appellant's fourth assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. 5 It was plain error for the Trial Court not to grant a mistrial or in the alternative a new trial when the Court was notified that a juror had repeatedly fallen asleep during the trial.
The appellant claims that he should have been granted a mistrial or a new trial because he alleged during his sentencing proceeding that Juror No. 10 slept through part of his trial. There is no evidence in the record, aside from the appellant's belated allegations, to suggest that these events actually occurred.
Accordingly, the appellant's fifth assignment of error is overruled.
Having found no error prejudicial to appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
WALTERS, P.J., and BRYANT, J., concur.
[1] See State v. Clay (1972), 29 Ohio App.2d 206, 212. See, also,O'Brien v. Angley (1980), 63 Ohio St.2d 159, 163 ("[W]hen the trial court determines that certain evidence will be admitted or excluded from trial, it is well established that the order or ruling of the court will not be reversed unless there has been a clear and prejudicial abuse of discretion."); State v. Davie (Dec. 27, 1995), Trumbull App. No. 92-T-4693, unreported.
[2] State v. Kline (1983), 11 Ohio App.3d 208, 212.
[3] State v. Hartford (1984), 21 Ohio App.3d 29, 31.
[4] Id.
[5] Clay, 29 Ohio App.2d at 212.
[6] National City Bank v. Fleming (1981), 2 Ohio App.3d 50, 57.
[7] State v. Williams (1982), 7 Ohio App.3d 160, 161 (quoting Evid.R. 1003 Staff Notes)
[8] Fleming, 2 Ohio App.3d at 57.
[9] Staff Note to Evid.R. 1003.
[10] Evid.R. 901 (A), (B)(1).
[11] State v. Brown (1995), 107 Ohio App.3d 194, 200.
[12] Id. (quoting State v. Blevins (1987), 36 Ohio App.3d 147,150).
[13] Id.
[14] State v. Wright (1990), 48 Ohio St.3d 5, syllabus.
[15] Crim.R. 30(A) reads, in relevant part:
 On appeal, a party may not assign as error the giving or the failure to give any [jury] instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection outside the hearing of the jury.
[16] State v. Davis (1991), 62 Ohio St.3d 326, 339.
[17] (2000), 89 Ohio St.3d 504.
[18] (2000), 89 Ohio St.3d 519.
[19] Woods, 89 Ohio St.3d at 511 (footnote omitted).
[20] Accord State v. Hopkins (Nov. 27, 2000), Stark App. Nos. 2000CA00053 2000CA00054, unreported.