[Cite as *Bank of New York Mellon v. Fisher*, 2020-Ohio-4742.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

BANK OF NEW YORK MELLON,  :

  Plaintiff-Appellee,  :

            No. 108855

  v.        :

JOHNSON L. FISHER, ET AL.,  :

  Defendants-Appellants.  :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 1, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-891635

---

### *Appearances:*

Carpenter Lipps & Leland, L.L.P., David A. Wallace, and Tyler K. Ibom, *for appellee.*

Law Office of Grace M. Doberdruk and Grace M. Doberdruk, *for appellants.*

RAYMOND C. HEADEN, J.:

{¶ 1} Defendants-appellants Johnson L. and Maviese Fisher ("the Fishers") appeal the trial court's ruling that granted plaintiff-appellee The Bank of New York

Mellon as Trustee for CWABS, Inc. Asset-Backed Certificates, Series 2005-4's ("BONYM") motion for summary judgment, and entered a decree of foreclosure. For the reasons that follow, we affirm.

## I.     Factual and Procedural History

**{¶ 2}**     On May 25, 2005, the Fishers borrowed $842,316 from Countrywide Home Loans, Inc. ("Countrywide") and executed an adjustable rate note ("note") in which the Fishers agreed to repay the loan.  To secure payment of the note, the Fishers executed a mortgage on real property located in Solon, Ohio ("the property") in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), acting as a nominee for the lender, Countrywide.  The mortgage was recorded in the Cuyahoga County Recorder's Office on June 9, 2005.

**{¶ 3}**     On April 30, 2010, Countrywide executed an assignment of the Fishers' note and mortgage to sell, assign, and transfer the loan documents to BONYM.  The assignment was recorded with the Cuyahoga County Recorder's Office on May 6, 2010.

**{¶ 4}**     On May 19, 2010, BONYM filed a motion for relief from a stay in the Fishers' bankruptcy case.  Attached to the motion was a copy of the note with an undated allonge that transferred the note from Countrywide to BONYM.  No blank indorsement was stamped on the note.

**{¶ 5}**     The Fishers executed a loan modification agreement on April 18, 2015, whereby they agreed to new payment terms effective May 1, 2015.  The loan modification agreement — that identified Green Tree Servicing L.L.C. ("Green

Tree") as the lender and the Fishers as the borrowers — amended and supplemented the mortgage and note ("the loan documents") previously executed in 2005. The terms of the loan modification agreement stated it was signed by the same parties who executed the loan documents or their authorized representatives. The loan modification agreement did not replace or supersede the loan documents except for the new payment terms; the terms of the loan documents were reaffirmed by the loan modification agreement and remained in full force and effect.

{¶ 6} Due to the Fishers' failure to submit timely payments per their note, BONYM's loan servicer, Select Portfolio Servicing, Inc. ("SPS"), forwarded the Fishers a notice of default — right to cure letter ("notice of default") on September 18, 2017. The letter identified the amounts due from the Fishers and stated the balance due could be accelerated and foreclosure proceedings initiated absent payment to cure the debt. Following receipt of the notice of default, the Fishers did not remit payment.

{¶ 7} At an unknown date, BONYM requested a supplementary preliminary judicial report from Chicago Title Insurance Company ("Chicago Title") to be used in judicial proceedings. Chicago Title's report labeled Countrywide's April 30, 2010 assignment of the Fishers' note and mortgage to BONYM — which was recorded with the Cuyahoga County Recorder's Office on May 6, 2010 — as invalid.

{¶ 8} On December 19, 2017, MERS, as nominee for Countrywide, completed a second corporate assignment of mortgage to BONYM. SPS requested a recording of the assignment, and the assignment was recorded with the Cuyahoga

County Fiscal Office on January 3, 2018.  BONYM contends the second assignment was necessitated following the preliminary judicial report that described the May 6, 2010 assignment as invalid.

{¶ 9}  The Fishers failed to make payments due under the note and BONYM filed a complaint in foreclosure on January 16, 2018.[1]  The foreclosure complaint alleged as follows:  the note and mortgage were in default; BONYM satisfied the conditions precedent; the entire balance was due and payable; and BONYM was entitled to enforce the note and mortgage.  Attached to the foreclosure complaint were copies of the note indorsed in blank by Countrywide, the mortgage, the December 19, 2017 assignment of the mortgage, the loan modification agreement, and the supplementary preliminary judicial report issued by Chicago Title.  The Fishers filed an answer and counterclaims on February 21, 2018.  BONYM filed a motion to dismiss the Fishers' counterclaim on March 21, 2018, and the trial court denied that motion.  On September 14, 2018, BONYM filed a motion for summary judgment that the Fishers opposed on October 15, 2018.  BONYM filed a reply brief on October 25, 2018.

{¶ 10} A magistrate's decision rendered on March 21, 2019, found BONYM had standing to bring the foreclosure action and that BONYM was entitled to summary judgment.  Both parties filed objections to the magistrate's decision.  On

_____

[1] The foreclosure complaint also named Countrywide Home Loans Inc., Chagrin River Highlands Homeowner's Association, Inc., and David B. Gallup as defendants. Those parties and the allegations raised against them or by them are not relevant to the instant appeal and are not addressed herein.

July 16, 2019, the trial court entered an order that overruled the parties' objections and adopted the magistrate's decision in full.

{¶ 11} The Fishers filed a timely notice of appeal on July 29, 2019, and present the following assignments of error, verbatim, for our review:

> First Assignment of Error: The trial court erred by not finding that appellee Bank of New York Mellon lacked standing when the modification had the lender Green Tree Servicing L.L.C.

> Second Assignment of Error: Appellee was not entitled to judgment as a matter of law because a material issue of fact remained for trial regarding whether appellee had possession of appellants' original note when the complaint was filed and whether the note was altered since there were multiple versions of appellants' original note.

> Third Assignment of Error: The trial court erred by granting appellee's motion for summary judgment when affiant Maria Soberon lacked personal knowledge and material issues of fact existed for trial.

> Fourth Assignment of Error: The trial court erred finding that all conditions precedent to foreclosure were complied with.

> Fifth Assignment of Error: The trial court erred by granting judgment to appellee on the counterclaims.

## II. Law and Analysis

### A. Standard of Review

{¶ 12} Before a trial court grants a motion for summary judgment, pursuant to Civ.R. 56(C), the court must determine that:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

{¶ 13} On a motion for summary judgment, the moving party's initial burden is to identify specific facts in the record that demonstrate its entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the moving party does not satisfy this burden, summary judgment is not appropriate. If the moving party meets the burden, the nonmoving party has a reciprocal burden to point to evidence of specific facts in the record that demonstrate the existence of a genuine issue of material fact for trial. *Id.* at 293. Where the nonmoving party fails to meet this burden, summary judgment is appropriate. *Id.*

{¶ 14} In a foreclosure action, a plaintiff must prove the following to prevail on a motion for summary judgment:

> (1) that the plaintiff is the holder of the note and mortgage, or is a party entitled to enforce the instrument; (2) if the plaintiff is not the original mortgagee, the chain of assignments and transfers; (3) that the mortgagor is in default; (4) that all conditions precedent have been met; and (5) the amount of principal and interest due.

*Deutsche Bank Natl. Trust Co. v. Najar*, 8th Dist. Cuyahoga No. 98502, 2013-Ohio-1657, ¶ 17.

{¶ 15} An appellate court applies a de novo standard when reviewing a trial court's decision that granted summary judgment. *Bayview Loan Servicing, L.L.C. v. St. Cyr*, 2017-Ohio-2758, 90 N.E.3d 321, ¶ 11 (8th Dist.).

## B. Soberon's Supplemental Affidavit

**{¶ 16}** Initially, we will address the trial court's consideration of Maria Soberon's ("Soberon") supplemental affidavit that BONYM attached to its reply brief in response to the Fishers' brief in opposition.

**{¶ 17}** Parties are not permitted to raise new arguments or evidence in a reply brief because the nonmoving party does not have an adequate opportunity to respond under the Civil Rules of Ohio. *Foradis v. Marc Glassman, Inc.*, 8th Dist. Cuyahoga No. 103454, 2016-Ohio-5235, ¶ 8. Specifically, "Civ.R. 56(C) does not provide for the right to a surreply, leaving a party ambushed by new arguments in a reply brief with no opportunity to respond." *Id.* at ¶ 8. However, courts permit the filing of a reply brief containing a supplemental affidavit where the reply rebuts arguments set forth in the brief opposing the motion for summary judgment and the supplemental affidavit clarifies previously raised issues. *Deutsche Bank Natl. Trust Co. v. Ayers*, 11th Dist. Portage No. 2019-P-0094, 2020-Ohio-1332, ¶ 47-48.

**{¶ 18}** Here, BONYM filed a motion for summary judgment and attached the original affidavit of Soberon, an employee of BONYM's loan servicer, SPS. SPS had serviced BONYM's loans since July 16, 2017. Following the Fishers' filing of a brief in opposition, BONYM filed a reply brief and attached Soberon's supplemental affidavit. The reply brief addressed arguments discussed in the Fishers' opposition brief and the supplemental affidavit sought to clarify issues previously raised, including whether the note contained a blank indorsement; possession of the note; the existence of multiple versions of the note; the history of loan servicers for the

Fishers' loan; and the identity of the individual who verified BONYM's responses to the Fishers' interrogatories. These were not new issues raised to ambush the Fishers, but were proffered to clarify pending items.

{¶ 19} Further, the Fishers neither filed a motion to strike the reply brief nor a leave to file a surreply brief. Absent an objection, the trial court was free to consider the supplemental affidavit attached to the reply brief. *Lewis Potts, Ltd. v. Zordich*, 11th Dist. Trumbull No. 2018-T-0028, 2018-Ohio-5341, ¶ 41. *See Brown v. Ohio Cas. Ins. Co.*, 63 Ohio App.2d 87, 90-91, 409 N.E.2d 253 (8th Dist.1978) (the trial court did not err when it considered unverified documents to support a summary judgment motion where neither party objected to the other's use of those materials).

{¶ 20} The trial court properly considered Soberon's supplemental affidavit in support of BONYM's motion for summary judgment.

### C. First Assignment of Error — Loan Modification Agreement

{¶ 21} The Fishers contend in their first assignment of error that BONYM was not entitled to enforce the note and, therefore, lacked standing. Specifically, the Fishers argue that even if BONYM had possession of the original note, BONYM lacked standing because execution of the loan modification agreement transferred the note to Green Tree and, therefore, only Green Tree could enforce the note.

{¶ 22} R.C. Chapter 1303 governs commercial paper. An instrument, such as the Fishers' note, is negotiated through "a voluntary or involuntary transfer of possession of an instrument by a person other than the issuer to a person who by

the transfer becomes the holder of the instrument." R.C. 1303.21(A). Where the instrument "is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder. If an instrument is payable to bearer, it may be negotiated by transfer of possession alone." R.C. 1303.21(B).

{¶ 23} R.C. 1303.24 describes indorsement as "a signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words" negotiates the instrument. R.C. 1303.24(A)(1). Special and blank indorsements have been detailed as follows:

> An indorsement that identifies the person or entity "to whom it makes the instrument payable" is a special indorsement. R.C. 1303.25(A). "An instrument, when specially indorsed, becomes payable to the identified person and may be negotiated only by the indorsement of that person." R.C. 1303.25(A). A special indorsement exists in opposition to a blank indorsement, which does not identify a payee, and instead makes the instrument "payable to bearer" and negotiable "by transfer of possession alone until specially indorsed." R.C. 1303.25(B).

*BAC Home Loans Servicing, L.P. v. Blythe*, 7th Dist. Columbiana No. 12 CO 12, 2013-Ohio-5775, ¶ 12.

{¶ 24} Here, under the loan modification agreement executed on April 18, 2015, the Fishers agreed to new payment terms effective May 1, 2015. The loan modification agreement amended and supplemented the loan documents — the note and mortgage — previously executed in 2005. The loan modification agreement did not replace or supersede the loan documents except for the new payment terms; the terms of the loan documents were reaffirmed within the loan

modification agreement and remained in full force and effect. Only the new payment terms presented in the loan modification agreement superseded contrary provisions in the original note and mortgage.

{¶ 25} The terms of the loan modification agreement stated the document was signed by the same parties to the loan documents or their authorized representatives:

> 4. Additional Agreement. I agree to the following:
>
> A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement * * *.

(Loan Modification Agreement at paragraph 4(A).) Hence, Green Tree could execute the agreement on BONYM's behalf, but BONYM was still the party in interest to the note and loan modification agreement.

{¶ 26} In support of their claim that the loan modification agreement transferred the note to Green Tree, the Fishers point to the first page of the loan modification agreement that references Green Tree as the lender. Additionally, signature lines were provided on the last page for Green Tree, MERS, and the Fishers. The word "lender" was printed directly under Green Tree's signature line and these sentences were written underneath MERS' signature line:

> The servicer may execute the Agreement on behalf of MERS and, if applicable, submit it for recordation. This communication is from a debt collector. It is an attempt to collect a debt, and any information obtained will be used for that purpose.

(Loan modification agreement.) MERS, acting as nominee, executed the loan modification on April 21, 2015; the signature line for Green Tree was left blank.

{¶ 27} It is not unusual for a loan servicer to complete a loan modification agreement on behalf of the note holder. (Soberon supplemental affidavit.) Green Tree was a prior loan servicer of the Fishers' loan, and it appears they were employed in that capacity in May 2015, when the parties executed the loan modification agreement. (Soberon supplemental affidavit.) While the loan modification agreement referenced Green Tree as the lender, the agreement's terms clarified Green Tree was acting in its capacity as a servicer, the authorized representative of the actual lender. A thorough reading of the loan modification agreement reveals the agreement did not transfer any rights in the note or mortgage; the parties intended to maintain the original terms and parties to the loan documents, excepting the newly agreed upon payment terms.

{¶ 28} The Fishers contend that the loan modification agreement was comparable to a special indorsement that resulted in (1) the note being payable only to Green Tree, and (2) an equitable assignment of the mortgage to Green Tree. The Fishers rely on *Blythe*, 7th Dist. Columbiana No. 12 CO 12, 2013-Ohio-5775, where the court found a nonholder in possession of specially indorsed commercial paper could not indorse the note without first demonstrating its acquisition of the paper or transfer. *Blythe* at ¶ 17. The Fishers also reference *Fannie Mae v. Hicks*, 2015-Ohio-1955, 35 N.E.3d 37 (8th Dist.), where Fannie Mae was not entitled to a judgment under the mortgage because it lacked the right to enforce the note under the lost-note exception. Yet, BONYM was not a nonholder in possession of specially indorsed commercial paper nor a holder attempting to enforce the note under a lost-

note exception. And while we do not dispute the holdings in *Blythe* and *Hicks*, we do not find the facts analogous to the case sub judice.

{¶ 29} The Fishers have provided no case law that demonstrates the execution of a loan modification agreement serves as a special indorsement of commercial paper nor have we found any such precedent. Moreover, the language of the loan modification agreement demonstrated that the original note was neither modified nor negotiated so as to transfer interest to Green Tree, the loan servicer, pursuant to the transaction. The loan modification agreement did not negotiate the Fishers' note and the facts of *Blythe* and *Hicks* are inapplicable to the case herein.

{¶ 30} The Fishers did not introduce any evidence that demonstrated the note was negotiated through execution of the loan modification agreement. Thus, the Fishers' first assignment of error lacks merit and is overruled.

### D. Second Assignment of Error — Possession of the Original Note and Different Versions of the Note

{¶ 31} In their second assignment of error, the Fishers argue that genuine issues of material fact existed (1) with regard to whether BONYM possessed the original note when the complaint was filed and was entitled to enforce the note, and (2) whether the note was altered because a different version was affixed to the bankruptcy motion to stay execution in comparison to the foreclosure complaint.

#### 1. Right to Enforce the Note

{¶ 32} To pursue a foreclosure action, a party must demonstrate it has the right to enforce the note. *HSBC Bank USA, N.A. v. Surrarrer*, 8th Dist. Cuyahoga No. 100039, 2013-Ohio-5594, ¶ 17. The holder of a note is entitled to enforce the

note.  *U.S. Bank, N.A. v. Matthews*, 8th Dist. Cuyahoga No. 105011, 2017-Ohio-4075, ¶ 30, citing R.C. 1303.31(A)(1).  After negotiation or transfer of the note, an entity is considered the holder, as defined in Article Three of the Uniform Commercial Code adopted in Ohio, ""'[i]f the instrument is payable to an identified person [and] the identified person [is] in possession of the instrument[,]'" or, if it is payable to the bearer, anyone in possession." *Surrarrer* at ¶ 17, quoting *Wells Fargo Bank N.A. v. Freed*, 3d Dist. Hancock No. 5-12-01, 2012-Ohio-5941, ¶ 22, quoting R.C. 1301.01(T)(1)(b), repealed in Am.H.B. No. 9, 2011 Ohio Laws.  "Pursuant to R.C. 1303.25(B), when an instrument is indorsed in blank, the instrument becomes payable to bearer and may be negotiated by transfer of possession alone." *CitiMortgage, Inc. v. Evans*, 8th Dist. Cuyahoga No. 101882, 2015-Ohio-1384, ¶ 16.  Further, "[t]he law in Ohio is that the physical transfer of a note indorsed in blank, which the mortgage secures, 'constitutes an equitable assignment of the mortgage, regardless of whether the mortgage is actually (or validly) assigned or delivered.'" *Bank of Am. N.A. v. Farris*, 2015-Ohio-4980, 50 N.E.3d 1043, ¶ 17 (8th Dist.), quoting *Najar*, 8th Dist. Cuyahoga No. 98502, 2013-Ohio-1657, at ¶ 65.

{¶ 33} A party must show it was the holder of the note and the mortgage on the date of filing the foreclosure complaint or else summary judgment is inappropriate.  *Najar* at ¶ 56, citing *Wells Fargo Bank, N.A. v. Jordan*, 8th Dist. Cuyahoga No. 91675, 2009-Ohio-1092, ¶ 23.  A party's proof that it was the holder of the note and mortgage at the time the foreclosure complaint was filed need not be

provided when the complaint is filed, but may be included with its motion for summary judgment. *Najar* at ¶ 57.

{¶ 34} Here, BONYM was not the identified person on the note. In order to be the holder, or one entitled to enforce the note, the note had to be signed over to BONYM or indorsed in blank. The note affixed to the foreclosure complaint includes a blank indorsement from Countrywide. Based upon BONYM's interrogatory responses, the record demonstrates BONYM, through its custodian, was in possession of the original note at the time it filed the foreclosure complaint. (Response to interrogatory No. 9.)[2] Further, Soberon attested to her review of the original note indorsed in blank, a true and accurate copy of which was attached to her supplemental affidavit. A comparison of that note with the one attached to the foreclosure complaint reveals they are identical. The record shows BONYM established it was the holder of the note and entitled to enforce it when BONYM filed the foreclosure complaint.

{¶ 35} BONYM also held the mortgage. The mortgage was equitably assigned to BONYM when the note indorsed in blank was transferred to BONYM. *Najar* at ¶ 65. Additionally, the December 19, 2017 assignment of the mortgage

---

[2] The Fishers' argument that the answers to interrogatories were inadmissible because the signature on the verification page was illegible is unfounded. Answers to interrogatories, which are signed, sworn to, and served upon the party submitting them, may be submitted in support of a motion for summary judgment. Civ.R. 33(A) and 56(C); *See Allstate Ins. Co. v. Rule*, 64 Ohio St.2d 67, 70, 413 N.E.2d 796 (1980) (court erred when it accepted a document purporting to be answers to interrogatories but the answers were not signed, sworn, or served upon the party submitting them.). BONYM's interrogatory answers were signed, sworn to, and served upon the Fishers.

documents the assignment of the mortgage to BONYM prior to the filing of the foreclosure complaint. The Fishers' argument that the December 19, 2017 assignment was void because it was drafted by an individual who was not a licensed attorney is unfounded and unsupported by case law. *Ayers,* 11th Dist. Portage No. 2019-P-0094, 2020-Ohio-1332, at ¶ 82.

{¶ 36} The Fishers assert a genuine issue of material fact existed as to the authenticity of the note and, thus, admission of the original note was required. Civ.R. 56(E) does not require a party to produce the original note before it is entitled to summary judgment. *Bank of Am., N.A. v. Merlo*, 11th Dist. Trumbull No. 2012-T-0103, 2013-Ohio-5266, ¶ 21. Civ.R. 56(E) requires sworn or certified copies referenced in an affidavit to be attached or served with the affidavit. This requirement is satisfied by attaching the papers to the affidavit, coupled with a statement therein that such copies are true copies and reproductions. *Ayers* at ¶ 63, citing *State ex rel. Corrigan v. Seminatore*, 66 Ohio St.2d 459, 467, 423 N.E.2d 105 (1981).

{¶ 37} Evid.R. 901 addresses authentication or identification of evidence and states that "'[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.'" *Ayers* at ¶ 64, quoting Evid.R. 901(A).

{¶ 38} Further,

> Evid.R. 1003 provides that "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." The party opposing the introduction of the duplicate has the burden of proving that there is a genuine question as to the authenticity of the original or that it would be unfair to admit the duplicate. *Natl. City Bank v. Fleming*, 2 Ohio App.3d 50, 57, 440 N.E.2d 590 (8th Dist.1981). The objection must be something more than a frivolous objection. *Id.* The decision to admit a duplicate is left to the trial court's sound discretion, and, unless it is apparent from the record that the trial court's decision is arbitrary or unreasonable, the determination will not be disturbed on appeal. *Id.*

*Merlo* at ¶ 19. The Fishers contend it was unfair to admit the duplicate note in lieu of the original "because the note exhibit to the foreclosure complaint contradicted the note exhibit to the motion for relief from stay in [a]ppellants' bankruptcy case." (Appellants' brief at 10.)

{¶ 39} The notes attached to the bankruptcy filing and foreclosure complaint are not contradictory. The note attached to the bankruptcy filing had a second page with an undated allonge that transferred the note from Countrywide to BONYM. The foreclosure complaint contained a note that did not contain the undated allonge but included a blank indorsement from Countrywide. Both versions of the note indicate Countrywide transferred the note to BONYM. The Fishers have presented no evidence to show it was unfair to admit copies of the note attached to the foreclosure complaint. Soberon's original affidavit states true and accurate copies of these relevant documents were attached as exhibits: the Fishers' note with a blank indorsement, the mortgage, the April 30, 2010 assignment, and the December 19, 2017 assignment. Soberon's supplemental affidavit states she reviewed the original

blue-ink note with an in blank indorsement and a true and accurate copy was attached as an exhibit. The original blue-ink note also contained a second page that included an allonge with a specific indorsement from Countrywide to BONYM. The note attached to Soberon's original affidavit; the copy of the blue-ink note attached to Soberon's supplemental affidavit; and the copy affixed to the foreclosure complaint are identical except for the allonge included with the blue-ink note. Soberon also averred in her supplemental affidavit that she verified BONYM's responses to the Fishers' first set of interrogatories and attached a copy of those responses as an exhibit. The sworn interrogatory responses demonstrate BONYM was in possession of the original note when the foreclosure complaint was filed. Soberon's affidavits comply with Civ.R. 56(E) and Evid.R. 901(A) for purposes of authentication. The trial court did not err when it accepted a copy of the note — rather than the original — to support BONYM's summary judgment motion.

### 2. Different Versions of the Note

{¶ 40} On May 19, 2010, BONYM filed a motion for relief from a stay of execution in the Fishers' bankruptcy case. Attached to that motion, BONYM attached a copy of the note. No blank indorsement was reflected on the note but an undated allonge was attached that indicated Countrywide transferred the note to BONYM. BONYM subsequently filed a foreclosure complaint against the Fishers on January 16, 2018. Attached to the foreclosure complaint was the note, absent the allonge, but with a blank indorsement signed by David A. Spector ("Spector"), Managing Director of Countrywide.

{¶ 41} The Fishers question the validity of the blank indorsement based upon the two different copies of the note and the multiple assignments. Here is a full summary of the assignments of the Fishers' note and mortgage and the provided copies of the note. The Fishers and Countrywide executed the original note on May 25, 2005. On April 30, 2010, Countrywide assigned the note and mortgage to BONYM and recorded the assignment with the county recorder's office. On May 19, 2010, BONYM filed a motion with the bankruptcy court and affixed a copy of the note with an undated allonge transferring the note from Countrywide to BONYM. A supplementary preliminary judicial report from Chicago Title put BONYM on notice that the April 30, 2010 assignment was invalid. Thus, MERS, as nominee for Countrywide, completed a second corporate assignment of the mortgage to BONYM on December 19, 2017. When BONYM filed its foreclosure complaint against the Fishers, the attached note contained an in blank indorsement from Countrywide that was signed by Spector. Thus, two assignments occurred and two versions of the note existed — one with an undated allonge transferring the note from Countrywide to BONYM, and one with an in blank indorsement from Countrywide without an allonge.

{¶ 42} The Fishers presented a press release — an exhibit to Johnson Fisher's affidavit that was provided with the Fishers' brief in opposition — that stated Spector's employment with Countrywide terminated in 2006. The Fishers argue that a legitimate in blank indorsement by Spector would have had to have been affixed prior to 2006 — the year Spector's employment with Countrywide

ended. However, the Fishers argue that if the blank indorsement was executed between 2005 and 2010, there would have been no reason for Countrywide to subsequently assign the note in 2010. Countrywide did assign the Fishers' note and mortgage to BONYM on April 30, 2010, with the assignment being recorded on May 6, 2010. Further, the Fishers claim the bankruptcy filing of the motion for relief from stay that included an allonge but no blank indorsement "was an admission by [BONYM] that [the Fishers'] original note was not indorsed by David Spector in 2010." (Appellants' brief at 9.) Since there was no need for the blank indorsement after the May 2010 assignment, the Fishers argue there is a genuine issue whether the blank indorsement by Spector was valid.

{¶ 43} The Fishers also maintain a document contained in SPS's records dated February 7, 2014, and titled "NOTE-INDORSED CLOSING FILED RESOLUTION" created a factual issue whether the note was altered. The document — a fax coversheet that indicated three additional pages were attached to it — related to the Fishers' loan. The bottom of the document reads: "Qualifier Code -083-INDORSED." The attachments to the fax coversheet were not provided.

{¶ 44} The record reflects two indorsements, a blank indorsement and an undated allonge, both transferred the note from Countrywide to BONYM. Both indorsements were not necessary. Likewise, the 2010 assignment was not necessary with either or both indorsements in place. The fact that two different versions of the note existed — one with an undated allonge and one without an allonge but containing an in blank indorsement to BONYM — as well as an unnecessary

assignment is curious but does not refute BONYM's status as holder of the note. *Evans*, 8th Dist. Cuyahoga No. 101882, 2015-Ohio-1384, at ¶ 26; *Bank of Am., N.A. v. Sweeney*, 8th Dist. Cuyahoga No. 100154, 2014-Ohio-1241, ¶ 22.[3] Further, the February 7, 2014 fax cover sheet contained in SPS's records does not invalidate the transfers or create a factual issue.

{¶ 45} The Fishers incorrectly compare the different versions of the note to the facts in *U.S. Bank, N.A. v. Lavelle*, 8th Dist. Cuyahoga No. 101729, 2015-Ohio-1307, where inconsistencies between two notes resulted in genuine issues of material fact that precluded resolution of the case by summary judgment. In *Lavelle*, notes affixed to two separate complaints were both purported to be the original note yet significant, obvious differences exited between them — the notes differed in page length and the indorsements on the notes were signed by different parties. *Id.* at ¶ 18-19. Here, the notes both transferred interest from Countrywide to BONYM although one transfer was by allonge and the other by a blank indorsement. The presence of a note with an allonge and no indorsement, and a copy with a blank indorsement did not create a genuine issue of material fact.

{¶ 46} Based upon the evidence reviewed in conjunction with BONYM's summary judgment, BONYM was in possession of the original note when it filed the

---

[3] Further, defendants in a foreclosure case, who were a nonparty to the indorsements and assignments of the note and mortgage, lack standing to challenge the validity of those transfers. *Bayview Loan Servicing, L.L.C. v. Big Blue Capital Partners, L.L.C.*, 9th Dist. Summit No. 27790, 2016-Ohio-3433, ¶ 13; *Bank of New York Mellon Trust Co., N.A. v. Unger*, 8th Dist. Cuyahoga No. 97315, 2012-Ohio-1950, ¶ 35 (nonparties to a mortgage assignment lacked standing to question those assignments.). The Fishers were not a party to the assignments and were not entitled to challenge their validity.

foreclosure complaint and was entitled to enforce the note. The two different versions of the note attached to the bankruptcy and foreclosure filings did not create a genuine issue of material fact. Thus, the Fishers' second assignment of error lacks merit and is overruled.

### E. Third Assignment of Error — Affiant Maria Soberon Lacked Personal Knowledge

{¶ 47} The Fishers argue that the trial court erred when it determined the Soberon affidavits were based on personal knowledge and were proper Civ.R. 56 evidence provided in support of BONYM's summary judgment. Specifically, the Fishers contend that (1) Soberon's affidavit was insufficient because it did not establish that she viewed the original note; the affidavit was not based upon personal knowledge; and the affidavit did not attach a document indicating the bank had possession of the original note, (2) Soberon could not authenticate the Fishers' payment history on the loan, and (3) the trial court erred when it considered new and speculative information contained in Soberon's supplemental affidavit and thereby weighed the credibility of the affiant with information contained in Johnson Fisher's affidavit.

### 1. Insufficient Affidavit

{¶ 48} The Fishers argue that BONYM's documents were unauthenticated because Soberon did not have personal knowledge of the records. Specifically, the Fishers contend Soberon did not view the original note; she lacked personal knowledge and could not authenticate the records; she did not show BONYM had

possession of the original note; and no document was provided that authorized SPS to act on BONYM's behalf.

{¶ 49} BONYM established possession of the original note when the foreclosure complaint was filed. Soberon attested to the fact that she reviewed the original blue-ink note and a copy was attached to her supplemental affidavit. The note indorsed in blank that was attached to the foreclosure complaint is identical to the copy attached to Soberon's supplemental affidavit, except for the allonge. The allonge attached to the original blue-ink note — and that was missing from the copy attached to the foreclosure complaint — was superfluous. BONYM's interrogatory responses stated BONYM had possession of the original note, through its custodian, at the time it filed the foreclosure action. This evidence demonstrated BONYM was in possession of the note indorsed in blank before it filed the foreclosure action. *MorEquity, Inc. v. Gombita*, 2018-Ohio-4860, 125 N.E.3d 300, ¶ 36 (8th Dist.).

{¶ 50} The Fishers' reliance on *Deutsche Bank Natl. Trust Co. v. Dvorak*, 9th Dist. Summit No. 27120, 2014-Ohio-4652, and *Bank of New York Mellon v. Villalba*, 9th Dist. Summit No. 26709, 2014-Ohio-4351, to negate BONYM's possession of the original note at the time the complaint was filed is misplaced. The *Dvorak* court found the granting of a motion for summary judgment inappropriate because Deutsche Bank failed to demonstrate it was in possession of the note when the complaint was filed. However, the facts set forth in *Dvorak* do not state that the note was attached to the foreclosure complaint. In *Villalba*, there was a discrepancy between the dates of the assignment of the mortgage and the affiant's claimed date

of ownership. The *Dvorak* and *Villalba* courts required additional documentation, such as supporting business records, to prove possession of the note when the complaint was filed. Additional documentation was not required here because the complaint and its attached exhibits, coupled with Soberon's affidavits and BONYM's answers to interrogatories show that BONYM was in possession of the original note on the date the foreclosure complaint was filed.

{¶ 51} Prior to admission of a business record, the business record must first be properly identified or authenticated "by sufficient evidence to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). Authentication may be satisfied by "testimony of [a] witness with knowledge." Evid.R. 901(B)(1). Moreover, "[a] witness authenticating records need not have personal knowledge of the creation of the document." *Bank of New York Mellon v. Roulston*, 8th Dist. Cuyahoga No. 104908, 2017-Ohio-8400, ¶ 16. "More precisely as it relates to foreclosure cases, this court has held that the affidavit of a loan servicing agent may be sufficient to authorize loan documents." *Id.* at ¶ 16.

{¶ 52} The Fishers appear to argue that Soberon did not authenticate the note indorsed in blank. Soberon's affidavits state she has personal knowledge of lending and loan servicing procedures based upon her employment with SPS as a Document Control Officer and her experience in the industry. Soberon has personal knowledge of how the relevant loan documents were created and maintained. Soberon attested that she personally reviewed and attached a true and accurate copy of the original blue-ink note to her supplemental affidavit. The blue-ink note is

identical to the copy attached to the foreclosure complaint — and Soberon's original affidavit — except for the addition of the allonge. The information contained within Soberon's affidavits authenticated the note. *See Ayers,* 11th Dist. Portage No. 2019-P-0094, 2020-Ohio-1332, at ¶ 67.

{¶ 53} Additionally, within her supplemental affidavit, Soberon referenced and attached a power of attorney that authorized SPS to act on BONYM's behalf. We find the power of attorney granted SPS authority to assist with foreclosure proceedings, including the execution of affidavits. There is no merit to the Fishers' contention that SPS was not authorized to prepare an affidavit to be used in the foreclosure proceedings.

### 2. Payment History

{¶ 54} Parties in a foreclosure action are not required to provide a complete payment history in order to prevail on summary judgment. *Matthews*, 8th Dist. Cuyahoga No. 105011, 2017-Ohio-4075, at ¶ 33; *Fannie Mae v. Herren*, 2017-Ohio-8401, 99 N.E.3d 1071, ¶ 41 (8th Dist.). The Fishers reference *Roulston*, 8th Dist. Cuyahoga No. 104908, 2017-Ohio-8400, to support their position that Soberon could not authenticate the payment history of the note because Soberon attached to her affidavit payment history documentation from both the previous servicer, Bank of America N.A., and her employer, SPS. The Fishers argue Soberon could not authenticate the documents of the former loan servicer. Yet,

> the holding in *Roulston* was narrowed in [*Deutsche Bank Trust Co. v.*] *Jones*, 2018-Ohio-587, 107 N.E.3d 117 [8th Dist.]; *see also Bank of New York Mellon v. Kohn*, 7th Dist. Mahoning No. 17 MA 0164, 2018-Ohio-3728, ¶ 14-17.

In *Jones*, the note and mortgage at issue were initially executed, respectively, in favor of First Magnus and MERS, acting as nominee for First Magnus. An undated allonge was attached to the note negotiating the document to Deutsche Bank as Trustee for Residential Accredit Loans, Inc. ("Deutsche Bank Trustee"). The homeowners' last payment was received in May 2012; the mortgage was assigned to Deutsche Bank Trust in August 2012 and Deutsche Bank in 2016. The loan servicing officer, who provided an affidavit supporting Deutsche Bank's motion for summary judgment, sufficiently demonstrated his personal knowledge of the default:

He averred that in the regular performance of his job functions, he reviews business records related to the servicing of the mortgage loan at issue, and that these records are maintained in the regular course of business. [He] authenticated the note, mortgage, and assignments, attesting that they are true and accurate. He also authenticated attached payment records detailing all payments and demonstrating that the Joneses' last payment was applied to the May 2012 installment of the mortgage. [He] averred that the Joneses were advised in August 2012 that the loan was in default, accelerating the unpaid balance of $142,475.

*Jones* at ¶ 20. Although Deutsche Bank held the note and mortgage subsequent to the Joneses' last mortgage payment, the loan servicing officer's affidavit provided sufficient information to authenticate the default.

*United States Bank Natl. Assn. v. O'Malley*, 8th Dist. Cuyahoga No. 108191, 2019-Ohio-5340, ¶ 57-58.

{¶ 55} Just as the loan servicing officer in *Jones* had sufficient knowledge to authenticate the default, so too did Soberon. Soberon's affidavit demonstrated her personal knowledge of the referenced business records that related to the servicing of the Fishers' loan. The records she reviewed were maintained in the regular course of business. Soberon authenticated the note, mortgage, loan modification agreement and assignments and attested the attached copies were true and accurate. Soberon also authenticated the attached notice of default letter, payment history,

contact history, and financial breakdown summary; attached copies of the referenced documents; and verified a balance of $845,483.11 was owing to BONYM. *Compare Fannie Mae v. Ford*, 2016-Ohio-919, 61 N.E.3d 524 (8th Dist.) (a ruling to grant motion for summary judgment was plain error where Federal National Mortgage Association, the party that filed a foreclosure action, failed to attach any documents referenced in its affidavit to its summary judgment motion.); *Third Fed. S. & L. Assn. of Cleveland v. Farno*, 12th Dist. Warren No. CA2012-04-028, 2012-Ohio-5245, ¶ 10 (summary judgment motion was not supported as provided in Civ.R. 56(E), when no documentation referenced in those portions of the affidavit were attached to or served with the affidavit to show default of payment and payment history).

{¶ 56} While the Fishers argue that *Wells Fargo Bank, NA v. Russell*, 9th Dist. Summit No. 29005, 2019-Ohio-776, supports their position, the case is not controlling and we find the facts distinguishable from this case. In *Russell*, the notice of default letters attached to the loan servicer's affidavit in support of motion for summary judgment on a foreclosure complaint were not produced by the loan servicer and were sent years prior to the servicer acquiring the loan. *Id.* at ¶ 26. Further, the payment history report and loan balance did not differentiate between payment histories from the prior loan servicer and the current servicer. *Id.* Here, SPS drafted and issued the default letters after SPS was retained to service the Fishers' loan. SPS provided separate payment histories from Bank of America N.A. and SPS. (Soberon original affidavit.) We find Soberon's affidavits demonstrate she

had the requisite knowledge to testify as to the default letter, payment history, contact history, and financial breakdown summary.

### 3. Weighing the Evidence

{¶ 57} The Fishers claim Soberon's supplemental affidavit was inadmissible because it presented new or speculative evidence and the trial court improperly weighed the credibility of witness testimony when it granted BONYM's summary judgment.

{¶ 58} As previously stated, the Soberon supplemental affidavit did not raise new or speculative issues but clarified arguments addressed in the Fishers' opposition brief. The Soberon affidavits were admissible for summary judgment purposes.

{¶ 59} Johnson Fisher's affidavit, affixed to the Fishers' opposition brief, discussed a press release that was introduced to show Spector left his Countrywide employment in 2006. The press release constituted hearsay and would have been excluded from the trial court's consideration. *Residential Funding Co., L.L.C. v. Thorne*, 2012-Ohio-2552, 973 N.E.2d 294, ¶ 33 (6th Dist.). Absent the introduction of Johnson Fisher's affidavit, there is no basis to the Fishers' allegation that the affidavit presented conflicting evidence that should have been weighed by the trier of fact.

{¶ 60} For the foregoing reasons, the Fishers' third assignment of error lacks merit and is overruled.

## F. Fourth Assignment of Error — Conditions Precedent

{¶ 61} The Fishers argue in their fourth assignment of error that BONYM failed to send a proper notice of acceleration prior to filing its foreclosure action and, therefore, failed to satisfy the conditions precedent.

{¶ 62} Where the terms of a mortgage require prior notice of default or acceleration, compliance with that requirement acts as a condition precedent to foreclosure. *Nationstar Mtge., L.L.C. v. Wagener*, 8th Dist. Cuyahoga No. 101280, 2015-Ohio-1289, ¶ 53. A party seeking to foreclose on a mortgage must establish that such notice has been provided.

{¶ 63} BONYM sent a notice of default to the Fishers on September 18, 2017. The Fishers contend that the notice of default letter did not contain the identical language contained in the mortgage and, therefore, was deficient.

{¶ 64} Paragraph 22 of the mortgage reads:

22. **Acceleration; Remedies**. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice *shall* further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. * * *

(Emphasis added.)

{¶ 65} The default notice, sent by SPS to the Fishers, reads, in relevant part:

You have the right to cure after acceleration of your loan and commencement of foreclosure proceedings. If you meet the conditions to reinstate, as provided in the Security Instrument, you *may* reinstate even after foreclosure has been initiated but prior to sale. This means that once you have met the conditions, the enforcement of the Security Instrument will be stopped and your Note and Security Instrument will remain, as if demand for payment in full had not been made. You will have this right at any time before the earliest of: (a) five days before sale of the property under any power of sale granted by the Security Instrument; (b) another period as applicable law might specify for the termination of your right to have enforcement of the loan stopped; or (c) a judgment has been entered enforcing your Security Instrument.

(Emphasis added.)

{¶ 66} The Fishers argue that BONYM misinformed them by stating the Fishers "may have the right to reinstate, instead of that they have the right to reinstate." (Appellants' brief at 33.) Because the mortgage provides a contractual right to reinstate after acceleration, the Fishers claim the default notice letter was required to state they have the right to reinstate.

{¶ 67} The Fishers rely on *Fed. Natl. Mtge. Assn. v. Marroquin*, 477 Mass. 82, 74 N.E.3d 592 (2017), for their proposition that an acceleration letter that does not exactly mirror the language contained in the mortgage results in a failure to comply with a condition precedent to foreclosure. The strict adherence language followed by the Massachusetts Supreme Court may be associated with the state's adoption of nonjudicial foreclosures whereas Ohio is a judicial foreclosure state. *Pinti v. Emigrant Mtge. Co.*, 472 Mass. 226, 237, 33 N.E. 3d 1213 (2015). Based

upon the differing foreclosure laws and the fact that *Marroquin* is not controlling, we do not find this case applicable to the current matter.

{¶ 68} Further, a careful review of the language within the mortgage and the default letter indicates BONYM — through the notice of default issued by SPS — clearly explained the Fishers' rights of reinstatement and referenced the rights of reinstatement detailed in the Fishers' mortgage. Paragraph 19 of the mortgage provides the Fishers' rights to reinstate after acceleration and states they "shall have" such a right if certain specified conditions are met. "Thus, the notice [of default] accurately informed [the Fishers] that [they] 'may' have a right to reinstate, because obtaining the right required [their] performance of several conditions." *Ayers*, 11th Dist. Portage No. 2019-P-0094, 2020-Ohio-1332, at ¶ 88. Additionally, the exact language used in the mortgage was not required in the default letter. *Wagener*, 8th Dist. Cuyahoga No. 101280, 2015-Ohio-1289, at ¶ 61; *Bank of Am., N.A. v. Stewart*, 7th Dist. Mahoning No. 13 MA 48, 2014-Ohio-723, ¶ 19-21.

{¶ 69} Thus, the Fishers' fourth assignment of error lacks merit and is overruled.

### G. Fifth Assignment of Error — Counterclaims

{¶ 70} In their fifth assignment of error, the Fishers claim the trial court erred when it granted summary judgment on their counterclaims that presented a violation of the Fair Debt Collection Practices Act ("FDCPA") and an invasion of privacy.

{¶ 71} The Fishers premise their FDCPA counterclaim on the fact that Green Tree, through the loan modification agreement, was the note holder and, therefore, Green Tree — not BONYM — was the creditor entitled to enforce the note. Similarly, the Fishers argue that because Green Tree was the correct party to pursue a foreclosure action against the Fishers, BONYM's filing of the foreclosure action served as an invasion of the Fishers' privacy.

{¶ 72} Based upon our review of the Fishers' first assignment of error and our determination that BONYM, not Green Tree, is the holder of the note with the right to enforce the note, the Fishers' counterclaims and any related arguments lack merit. Thus, we overrule the Fishers' fifth assignment of error.

{¶ 73} Judgment affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
RAYMOND C. HEADEN, JUDGE

EILEEN T. GALLAGHER, A.J., and
MARY J. BOYLE, J., CONCUR